Gary Lynn MURPHY, Appellant,

v.

The STATE of Texas, Appellee.

No. 102–86.

Court of Criminal Appeals of Texas, En Banc.

April 6, 1988.

On Rehearing June 21, 1989.

Bradley Lollar, Ruth Lown, on appeal only, Dallas, for appellant.

Henry Wade and John Vance, Dist. Attys., Michael A. Klein, Robert Phillips and Janice Warder, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Carl E.F. Dally, Sp. Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant was charged with murder and found guilty by a jury. Appellant filed an application for probation and the jury assessed punishment at life imprisonment and a $10,000 fine. The Dallas Court of Appeals reversed and remanded on the ground that the trial court had erred by admitting evidence of unadjudicated offenses during the punishment phase of the trial. *Murphy v. State,* 700 S.W.2d 747 (Tex.App.—Dallas, 1985). We granted the State's petition for discretionary review on the following ground for review:

> "The trial court properly ruled appellant's extraneous bad acts could be introduced into evidence during the punishment phase of trial in response to appellant's application for probation."

We will affirm the decision of the Court of Appeals.

Prior to trial appellant filed a sworn application for probation pursuant to Art. 42.-12 § 3a(a), V.A.C.C.P. During the punishment phase of the trial appellant testified in his own behalf. The following is all the evidence offered by appellant during punishment:

> "Q. (by appellant's attorney) State your name for the record, again, please.
>
> A. (by appellant) Gary Murphy.
>
> Q. You are one and the same person who was just found guilty by this jury, just a few minutes ago?
>
> A. Yes, sir.
>
> Q. Have you ever before been convicted of a felony offense in this or any other state or a federal jurisdiction?
>
> A. No.
>
> Q. Have you ever been placed on the felony probation in this or any other state or federal jurisdiction?
>
> A. No."

In rebuttal the State offered five witnesses to testify to unadjudicated offenses committed by appellant prior to the present offense. Gladys Work testified that appellant assaulted her and stole her purse on September 15, 1983. Officer R.W. Dobbs told the jury that he arrested appellant for driving while intoxicated on September 20, 1983. Two days later appellant led state troopers on a 25 mile car chase according to the testimony of Trooper Richard Shea. Marie Holt testified that appellant assaulted her on January 27, 1984. On the same day, Officer I.C. Hale found appellant sitting near his wrecked vehicle sniffing paint. Appellant objected to the preceding evidence because it involved acts of misconduct on the part of appellant that were not final convictions. Appellant's objections

were overruled, and the jury was allowed to consider these incidents when assessing punishment.

In its brief in support of its petition for discretionary review, the State attacks the Court of Appeals holding in two respects; that the unadjudicated offenses are independently admissible because they are relevant to show probable future conduct of the appellant, and that Art. 37.07 as interpreted by *Allaben v. State*, 418 S.W.2d 517 (Tex.Cr.App.1967), allows such punishment evidence on the issue of probation.

Taking the second attack first: Allaben, supra, dealt with the admissibility of defensive evidence concerning the defendant's post-offense psychiatric treatment as it related to the defendant's application for probation. The Court held that it was error to exclude such evidence, stating, id. at 519:

"Evidence to be offered at the hearing on punishment pursuant to the provisions of Article 37.07, Section 2(b), Vernon's Ann. C.C.P., is by no means limited to the defendant's prior criminal record, his general reputation and his character. Evidence legally admissible to mitigate punishment *or evidence that is relevant to the application for probation, if any, is also admissible.*"
[emphasis supplied]

At the time of the defendant's trial in *Allaben*, supra, and more importantly at the time of the writing of the opinion, Article 37.07, Section 2(b), V.A.C.C.P., read:

"(b) If a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense charged where the same is not absolutely fixed by law to some particular penalty except when the defendant, upon the return of a finding of guilty, requests that the punishment be assessed by the same jury. In the event the defendant elects to have the jury fix the punishment in cases where the punishment is fixed by law, the court shall instruct the jury that if they find the defendant is the same person who was convicted in the prior conviction or convictions alleged for enhancement,

they should set his punishment as prescribed by law.

Regardless of whether the punishment be assessed by the judge or the jury, *evidence may be offered* by the State and the defendant *as to the prior criminal record of the defendant, his general reputation and his character.*"
[emphasis supplied]

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722.

In 1967, the article was amended in one very important aspect, as follows:

Section 2. (b) Except as provided in Article 37.071, if a finding of guilty is returned, it shall then be the responsibility of the judge to assess the punishment applicable to the offense; provided, however, that (1) in any criminal action where the jury may recommend probation and the defendant filed his sworn motion for probation before the trial began, and (2) in other cases where the defendant so elects in writing at the time he enters his plea in open court, the punishment shall be assessed by the same jury. If a finding of guilty is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment.

(c) Punishment shall be assessed on each count on which a finding of guilty has been returned.

Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty.

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.
[emphasis supplied]

Acts 1967, 60th Leg., p. 1739, ch. 659, § 22, eff. Aug. 28, 1967.

With this amendment a statutory prohibition against the introduction of unadjudi-

cated extraneous offenses during the punishment phase of a trial as proof of prior criminal record was strictly imposed. *Elder v. State*, 677 S.W.2d 538 (Tex.Cr.App. 1984); *Ramey v. State*, 575 S.W.2d 535 (Tex.Cr.App.1978).

Nevertheless, prosecutors quickly invoked the above quoted and underlined portion of *Allaben*, supra, whenever they sought to introduce, as punishment evidence bearing upon a question of probation that was before the jury, unadjudicated extraneous offenses. Overlooking the 1967 amendment, as well as the fact that *Allaben*, supra, dealt with the introduction of evidence other than extraneous transactions which constituted offenses, this Court blindly adhered to the *Allaben* holding and it became the order of the day in this Court. In *Davis v. State*, 478 S.W.2d 958 (Tex.Cr.App.1972), we held it was proper to prove the defendant had committed a robbery one month before the charged offense because probation was a question before the jury and that:

> "While the general rule is that specific acts of misconduct by the accused which have not resulted in final convictions cannot be admitted, this court has been reluctant to exclude legally admissible evidence which is relevant to a fair determination of an accused application for probation. *Allaben v. State*, Tex.Cr.App., 418 S.W.2d 517; ..." [further citations omitted as not germane];

See also *Cleveland v. State*, 502 S.W.2d 24 (Tex.Cr.App.1973) (Defendant's prior marijuana purchase admissible on the issue of probation, citing *Allaben*, supra); *McCrea v. State*, 494 S.W.2d 821 (Tex.Cr.App.1973) (Permissible to ask defendant if he had ever been addicted to any drug because the

issue of probation was before jury, citing *Allaben*, supra); *Holmes v. State*, 502 S.W.2d 728 (Tex.Cr.App.1973) (Proper to establish that defendant had been in the drug abuse unit of a Veteran's Administration hospital because probation was before the jury, citing as one justification, the holding in *Allaben*, supra). See also cases cited in *Holmes*, supra, at 729.

Although our rationale does not entirely comport with that of the Court of Appeals',[1] we still agree with their initial holding that admission of the extraneous offenses violated Art. 37.07, § 3, V.A.C.C.P. Thus, whatever support *Allaben* might have given the State's position at the time it was written, the 1967 amendment to Art. 37.07, supra, rendered it of no precedential value on the narrow issue of admissibility of unadjudicated extraneous offenses solely to meet a defendant's application for probation. We find the State's second attack on the Court of Appeals' holding to be without merit.

The State also contends, notwithstanding the provision of Art. 37.07, that the unadjudicated offenses were independently admissible because they were relevant to show probable future conduct of the appellant. We therefore turn to a more traditional treatment of the admissibility of extraneous offenses.

Generally, the admissibility of an extraneous offense is determined by using a two-prong test:

> "First, it must be determined that the extraneous offense is relevant to a material issue in the case other than the defendant's character. [Footnote omitted.] Second, the evidence must possess probative value which outweighs its inflammatory or prejudicial effect."[2]

**1.** In their own discussion of *Allaben*, the Court of Appeals distinguished the present case from the *Holmes, Cleveland, Davis* and *McCrea* cases cited above. Characterizing these cases permitting evidence of extraneous offenses to correct a false impression created by a defendant before the jury, they said that no such false impression had been created by the appellant (see summary of appellant's evidence, in paragraph two, ante). Our reading of those cases makes it clear that whatever characterization or false impression language might have been used in them, the

true basis for their holding was *Allaben*, supra. For a recent and authoritative discussion of the doctrine that allows the State to correct a false impression left by a defendant, see *Prescott v. State*, 744 S.W.2d 128 (Tex.Cr.App.1988).

**2.** See and compare current Tex.R.Cr.Evid. 403:
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

*Plante v. State*, 692 S.W.2d 487, 491 (Tex. Cr.App.1985), citing *Williams v. State*, 662 S.W.2d 344 (Tex.Cr.App.1983). See also *Boutwell v. State*, 719 S.W.2d 164 (Tex.Cr. App.1986) (opinion on State's motion for rehearing), and *Robinson v. State*, 701 S.W.2d 895 (Tex.Cr.App.1985).

In the case before us, the evidence admitted concerned appellant's commission of unadjudicated offenses a few months prior to the commission of the instant offense. The issue upon which this evidence was admitted was whether appellant was a worthy candidate for probation. In order to determine whether the trial court erred by admitting this evidence for its intended purpose, we must apply the preceding two-prong test.

First, was the evidence relevant to the issue sought to be established? "Relevancy" has been defined as "that which makes the proposition at issue more or less probable." *Garza v. State*, 715 S.W.2d 642, 644 (Tex.Cr.App.1986), citing *Waldrop v. State*, 138 Tex.Cr.R. 166, 133 S.W.2d 969 (1940). The new Rules of Criminal Evidence, effective September 1, 1986, define the term in Rule 401:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

To be relevant, the evidence need not *establish* the proposed issue, but need only make its existence more or less probable. Stated another way, such evidence must at least be "a brick in the wall."

In the instant case, appellant applied for probation and testified that he was eligible. The State introduced evidence indicating that appellant would be a poor candidate for probation because he had not been able to conform his conduct to the law in the past. Whether the fact that an accused has committed criminal acts in the past makes it arguably less probable that he or she will follow the law in the future, is a

question best decided on a case by case basis according to the individual facts of each case.[3] This Court has made the observation here sought by the State, with regard to past offenses and probation applications and concerning probability that the accused will not be as apt to abide by the terms of probation, on several occasions. See *McCrea, Cleveland, Davis*, and *Holmes*, supra. But even if we were to concede that in this case the evidence was in some way relevant, we find that our determination on the second issue—whether the evidence was too prejudicial—renders the evidence inadmissible.

The rules prohibiting admission of extraneous offenses arise from the general rule that an accused is entitled to be tried upon the accusation made in the State's pleading and not on some collateral crime. See *Moore v. State*, 700 S.W.2d 193 (Tex.Cr. App.1985), and cases cited therein at 199.

Also, admission of extraneous offense evidence, albeit relevant to many issues, is inherently prejudicial to the defendant's right to a fair trial. *Id.* As was stated in *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr. App.1972), at 100:

> "Limitations on the admissibility of evidence of an accused's prior criminal conduct are imposed, not because such evidence is without legal relevance to the general issue of whether the accused committed the act charged, but because such evidence is *inherently prejudicial*, ...."

[emphasis added.]

Given the inherently prejudicial effect of extraneous offense evidence, social policy requires that such evidence be excluded unless its probative value clearly outweighs its prejudicial effect. See *Williams*, supra. See also *Kelley v. State*, 677 S.W.2d 34 (Tex.Cr.App.1984), and *Elkins v. State*, 647 S.W.2d 663 (Tex.Cr.App. 1983).

In the instant case, at least two factors militate against the probative value of the

---

jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

**3.** It may, for instance, be more probative if the extraneous offense was committed by a defendant *after* charges were brought against him.

admitted evidence. First, although some of the offenses involved assaultive conduct, all of the offenses were unadjudicated. The probative value of an unadjudicated offense will be less than that of an offense for which defendant, by due process of law, has been convicted. Second, the offense occurred before appellant's arrest for the instant offense. The *probandum* of the State, that the appellant would likely break the law in the future because he had done so in the past, was weakened by the fact that in regards to some of the extraneous offenses he had not been arrested, charged or indicted for these offenses prior to commission of the instant offense. Thus, appellant had not been brought before the law and confronted with responsibility for his actions.

The evidence was also highly prejudicial. Appellant had just been found guilty of stabbing his wife to death during an argument. Two of the extraneous offenses involved assaults against other women that occurred within six months of the instant offense. The similarity of these violent crimes was clearly prejudicial beyond the mere generic idea that appellant would continue to commit crimes.

On the facts of this case, the evidence introduced against appellant concerning the five acts of misconduct was beyond dispute more prejudicial to appellant than probative of his ability to abide by the laws in the future. Thus, even if we were to concede relevance under the facts of this case, the evidence should not have been admitted under *Williams*, supra, and the trial court erred by so doing.[4]

A determination that the trial court erred by admitting evidence of an extraneous offense does not end our inquiry. We must also determine whether the error was reversible. In cases such as the one before us, prior caselaw has been that a judgment will not be reversed for the erroneous admission of evidence unless there is a reasonable possibility that the evidence complained of contributed to the punishment assessed. *Prior v. State*, 647 S.W.2d 956, 960 (Tex.Cr.App.1983), and *Templin v. State*, 711 S.W.2d 30 (Tex.Cr.App.1986). See also *Plante*, supra, *Bordelon v. State*, 683 S.W.2d 9 (Tex.Cr.App.1985), *Johnson v. State*, 660 S.W.2d 536 (Tex.Cr.App.1983), and *Ward v. State*, 657 S.W.2d 133 (Tex.Cr. App.1983).

Our current standard is embodied in Texas Rule of Appellate Procedure 81(b)(2), which states:

> (2) *Criminal Cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment. [Emphasis supplied]

In the case at bar, the evidence presented during the guilt-innocence stage of the trial established that the victim and appellant had frequent quarrels during the seven years they were married. A number of quarrels involved acts of violence by the victim against appellant. Just prior to the stabbing in question, the victim and appellant argued, and the victim threatened to divorce appellant. Appellant's testimony

---

4. We note that the current germane portion of Art. 37.07 reads as follows:

> Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilty. (a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, *evidence may, as permitted by the Rules of Evidence, be offered* by the state and the defendant as to the *prior criminal record* of the defendant, his general reputation and his character. The term *prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.*

[emphasis supplied]
Acts 1987, 70th Leg., ch. 1101, § 15, eff. Sept. 1, 1987.

The rules of evidence arguably applicable to situations such as the case at bar are Tex.R.Cr. Evid. 608 and 609, 401 (quoted supra) through 405, and especially 404(c), which states:

> "(c) **Character relevant to punishment.** In the penalty phase, evidence may be offered by an accused or by the prosecution as to the *prior criminal record* of the accused...."

[emphasis supplied]
It would seem then that our holding today is unaffected by the promulgation of these rules.

also shows that the victim cut appellant with the knife three times before he stabbed her. Appellant had never before been convicted of a felony and was therefore eligible for probation.

As previously stated, the jury assessed the maximum punishment of life imprisonment and a $10,000 fine. The State's entire contention concerning the extraneous offenses was that they were relevant to appellant's application for probation. Even in view of the facts of this case, we cannot conclude beyond a reasonable doubt that the extraneous offenses made no contribution to the punishment. Thus, the trial court committed reversible error in admitting evidence of five prior acts of misconduct.

Accordingly, the decision of the Court of Appeals reversing the judgment of the trial court and remanding it to that court is affirmed.

McCORMICK, TEAGUE and DUNCAN, JJ., concur in the result.

CLINTON, Judge, dissenting.

*Murphy v. State*, 700 S.W.2d 747 (Tex. App.—Dallas 1985), applied literally the definition of "prior criminal record," distinguished on its facts and thus declined to be guided by a broad statement in *Allaben v. State*, 418 S.W.2d 517 (Tex.Cr.App.1967) (evidence that is relevant to the application for probation is also admissible), held Article 37.07, § 3 "controls the instant case" and, therefore, concluded: "The unadjudicated extraneous offense testimony admitted by the trial court was admitted in violation of article 37.07(3)." *Id.*, at 749–750.

Being in agreement with that particular rationale, but for the leading opinion by Judge Miller, like three other judges I too would concur in the resulting affirmance of the judgment rendered by the Dallas Court of Appeals.

In my view, however, the Legislature has yet to provide in Article 42.12, § 3a (a), that discretion of a jury in determining an application for probation need be informed by any evidence beyond that permitted in Article 37.07, § 3—much more evidence on the alleged "issue [of] whether appellant was a worthy candidate for probation," including unadjudicated offenses for the ostensible purpose of showing his "probable future conduct," slip opinion, at 6.

Therefore, I must dissent to that proposition, albeit expressed by a plurality of three judges. Similar issues await decision in other causes, and more will no doubt be written then.

WHITE, Judge, dissenting.

I dissent to the majority's exclusion of extraneous offenses at the punishment stage. Not only do I disagree with the majority's interpretation of Article 37.07, Sec. 3(a), V.A.C.C.P., but I also find their relevancy assessment untenable.

Article 37.07, Sec. 3(a) states:

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence *may be* offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged. [emphasis added].

The majority terms this "a statutory prohibition against the introduction of unadjudicated extraneous offenses during the punishment phase of a trial." However, there is no prohibitive language contained in this statute. The term "may" is permissive and the list of three types of evidence admissible at punishment is not facially exhaustive but exemplary in nature. Although evidence "may be" offered as to prior criminal record, reputation and character, any other relevant evidence can also be offered. This is how the statute was interpreted in *Allaben v. State*, 418 S.W.2d 517 (Tex.Cr.App.1967), when we stated,

Evidence to be offered at the hearing on punishment pursuant to Article 37.07, [citation omitted] is by no means limited to the defendant's prior criminal record, his general reputation and his character. Evidence legally admissible to mitigate

punishment or evidence that is relevant to the application for probation, if any, is also admissible.

*Allaben, supra* at 519.

Contrary to the majority's conclusion, *Allaben's* interpretation of 37.07 was not in any way affected by the subsequent amendment which added the last sentence to this section defining "prior criminal record." The term "prior criminal record" may have been limited, but the list of the types of evidence that may be offered is still exemplary and not exhaustive.[1]

*Allaben* correctly interpreted 37.07 as it was then and as it was at the time of the instant case.[2] It is for this reason that I disagree with the majority's discarding of *Allaben* and its extensive progeny. *See,* e.g., *Wilkerson v. State,* 736 S.W.2d 656, 659 (Tex.Cr.App.1987); *Baxter v. State,* 645 S.W.2d 812, 816 (Tex.Cr.App.1983); *Thomas v. State,* 638 S.W.2d 481, 483 (Tex. Cr.App.1982); *Cleveland v. State,* 502 S.W.2d 24 (Tex.Cr.App.1973); *McCrea v. State,* 494 S.W.2d 821 (Tex.Cr.App.1973); *Basaldua v. State,* 481 S.W.2d 851 (Tex.Cr. App.1972); *Davis v. State,* 478 S.W.2d 958, 959 (Tex.Cr.App.1972); *Brumfield v. State,* 445 S.W.2d 732, 741 (Tex.Cr.App.1969); *Santiago v. State,* 444 S.W.2d 758 (Tex.Cr. App.1969); *White v. State,* 444 S.W.2d 921, 923 (Tex.Cr.App.1969).

Furthermore, I dissent to the majority's determination that the inflammatory and prejudicial nature of the extraneous offenses outweighed their probative value.[3] The court charged the jury to consider the extraneous offenses only as to appellant's probation application. The majority holds that these extraneous offenses were irrelevant to this determination. I disagree.

The first inquiry in any relevancy analysis is to pinpoint the material fact in issue. By filing a probation application, appellant automatically created a contested issue: his suitability for probation. In order to determine what evidence is relevant, we must first set out the fact issues presented to the jury in determining whether a defendant should be placed on probation. Because the jury's discretion in determining suitability for probation is so broad, and the assessment more intuitive than technical in nature, the specific issues are difficult to explicitly delineate. Possibly, this is why the majority ignores this task.

Although the fact issues for the jury to consider in determining a defendant's suitability for probation are not statutorily set out, they can be gleaned from stated statutory purposes and case law. Probation is considered a privilege, not a punishment, an alternative to imprisonment where the defendant is given a chance to rehabilitate. Thus, the issues become the defendant's rehabilitative potential, likelihood of recidivism, danger to the community, and suitability to a probationary environment. *See,* Art. 1.03, V.A.C.C.P.; Art. 1.26, V.A.C.C.P.; Art. 42.12, Sec. 3, V.A.C.C.P.; V.T.C.A., Penal Code Sec. 1.02; *Baxter, supra; Thomas, supra* at 483–484, fn. 6–7; *Tezeno v. State,* 484 S.W.2d 374, 380 (Tex.Cr.App. 1972); *Logan v. State,* 455 S.W.2d 267, 270 (Tex.Cr.App.1970); *Schulz v. State,* 446 S.W.2d 872, 874 (Tex.Cr.App.1969); *Coleman v. State,* 442 S.W.2d 338 (Tex.Cr.App. 1969); *Fielding v. State,* 719 S.W.2d 361, 368–370 (Tex.App.—Dallas, 1986, no pet.). *Also see generally,* 3 Tex.Crim. Practice Guide, Sec. 74.03[2][a], p. 74–25–26. I find that, given the facts of the instant case, the five extraneous offenses, all of which were committed within six months of the instant

---

1. It is also noted that in a converse situation, where a defendant seeks to introduce mitigating evidence and is precluded from doing so by the majority's restrictive reading of 37.07, this could arguably render the statute unconstitutional. *See, Jurek v. Texas,* 428 U.S. 262, 271, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976) and footnote 4, *post; Thomas, supra* at 483–484, fn. 4–7. *Also see,* Code Construction Act, Sec. 311.021 (where there are two possible interpretations of a statute, it is to be construed to uphold its constitutionality).

2. For the presently applicable rules see Art. 37.07, Sec. 3(a), V.A.C.C.P.; Tex.R.Crim.Ev., R. 404(c).

3. It should be noted that it is confusing that the majority first finds the extraneous offenses statutorily inadmissible under 37.07, and then feels the need to go on and apply a relevancy analysis.

murder, were relevant to the determination of these issues.

These extraneous offenses were probative of the nature and extent of appellant's criminal history as it reflects on his suitability for probation. Appellant's history is every bit as relevant as the list enumerating twelve possible conditions of probation which was given to the jury in the court's charge (essentially the first eleven in Art. 42.12, Sec. 6(a) and that he pay a monthly probation fee). In fact, such a charge enhanced the relevancy of the extraneous offenses. The prior offenses had significant probative value in the jury's determination of appellant's capability to follow these probationary conditions, especially as to his capability not to violate laws. Contrary to the majority's determination, appellant's past criminal conduct is very illuminating on the probability of his future recidivism.[4] This is especially true when the numerous paint sniffing offenses denote a drug addiction likely to be repeated.

Further, any possible prejudicial affect of these offenses does not outweigh their probative value. The inherent danger of confusing and prejudicing issues of guilt, which is the basis for the general rule against admission of extraneous offenses, is absent when the issue of guilt has been resolved. Appellant had already been found guilty, thus, there was no danger that these extraneous offenses were utilized by the jury in convicting appellant.[5]

Additionally, the court charged the jury to consider these offenses only as to the possibility of probation, thus precluding any possible prejudicial effect on their assessment of the term of imprisonment. Moreover, two of the five extraneous offenses concerned appellant's paint sniffing. Two instances of paint sniffing were introduced at the guilt-innocence phase through appellant's confession and defensive testimony. Thus, the prejudicial effect of these paint sniffing offenses are minimal.

The jury had before it the task of determining whether appellant should be placed on probation. The immense probative value of the extraneous offenses is best exemplified by the instant facts. An assessment of the rehabilitative potential and criminal propensity of a man who has committed no prior bad acts and who killed his estranged wife while under the influence of sniffing paint and in a fit of rage, points toward the possibility of probation as an appropriate sentence. Such facts, as would have been before the jury without admission of the extraneous offenses, evidence a single act of directed rage not likely to be repeated. However, reality depicts a man with a history of committing violent offenses against women, paint sniffing abuse and disrespect for the law and police. These facts reflect a man with a drug addiction and a propensity for general violence which is likely to be repeated and which presents a threat to the community.

4. The majority asserts that past criminal conduct does not prove future conduct. However, our death penalty scheme rests upon the assumption that "future dangerousness" can be determined by past conduct. *See*, Art. 37.-071(b)(2), V.A.C.C.P. In death penalty cases, extraneous criminal conduct is admissible at punishment as necessary and probative evidence of future conduct. Implicit in this rule is the common sense fact that past conduct is highly probative of future conduct.

Further, there is no reasonable distinction between the juries' consideration of future conduct in their assessment of punishment in a death penalty as opposed to a non-death penalty case. In each instance, the jury is vested with broad discretion to predict the defendant's probable future conduct. However, some would argue that only in capital cases are extraneous offenses admissible because different policy considerations and interests are served and ef-

fectuated through the unique death penalty sentencing procedures. I find this argument specious. While a non-capital jury is not required to answer a statutorily prescribed special issue for future dangerousness, it is clear that their analysis of the appropriateness of a probationary sentence is dependent, in large part, upon a prediction of likely future conduct. Thus, future conduct is an issue to be resolved by the jury and, just as in capital cases, the criminal history of a defendant is highly probative of his future conduct.

5. In their relevancy analysis, the majority relies on cases which weigh relevancy issues presented at the guilt-innocence phase of trial going to prove intent, identity, knowledge, motive and design. Obviously, the highly prejudicial effect of extraneous offenses at this phase, when character is not in issue, is far different from their effect at punishment, when character *is* an issue.

Juries, comprised of law abiding citizens of the community in which the defendant, if given probation, will reside, are vested with the discretion to assess a fair and appropriate sentence. In their determination of the appropriateness of probation, they are entitled to know the defendant's criminal history, just as the judge is provided in a pre-sentence report when he considers the same. *See,* Art. 42.12, Sec. 4, V.A.C.C.P. There is nothing to show that a jury cannot be as fair and impartial as a judge or that the prior criminal history is not as every bit important to the juries' common sense determination of the issues. The probative value of the instant extraneous offenses in the juries' intelligent assessment of the sentencing alternatives is immense. Because the majority withdraws such probative and admissible evidence from the members of the jury, I must respectfully dissent.

ONION, P.J., joins this dissent.

ONION, Presiding Judge, concurring in part and dissenting in part.

Appellant Murphy was convicted by a jury of the murder of his wife. At the penalty stage of the trial, after the State rested without offering evidence, the appellant testified before the jury in support of his sworn motion for probation and merely stated that he had not been previously convicted of a felony or placed on probation. He thus established his eligibility for probation. See Article 42.12, § 3a(a), V.A.C.C.P. Appellant was not cross-examined. Appellant then rested. Thereafter the State, on the issue of probation, introduced over objection five witnesses who related the details of several recent extraneous unadjudicated offenses.

On appeal appellant, inter alia, complained of the admission of this evidence at his 1984 trial. The Dallas Court of Appeals, in an opinion by the late Justice James Allen, reversed the conviction on the basis of this ground (now point) of error.

Relying upon the panel opinion in *Ramey v. State,* 575 S.W.2d 535, 537 (Tex.Cr.App. 1978), the Court of Appeals found that Article 37.07, supra, established as a general rule that extraneous unadjudicated offenses are not admissible, and that the evidence of such offenses offered in the instant trial was controlled by the general rule. *Elder v. State,* 677 S.W.2d 538, 539 (Tex.Cr.App.1984). Distinguishing *Allaben v. State,* 418 S.W.2d 517 (Tex.Cr.App.1967), on its facts, the Court of Appeals also observed that departures from the general rules had been tolerated by this Court "only where the defendant has created a false impression before the jury" and held that in the instant case no such false impression was created.

The State's petition for discretionary review was granted to determine the correctness of the decision of the Court of Appeals. Upon further consideration it is clear that the Court of Appeals, given the particular circumstances of the instant case, reached the right result and its rationale is sufficient to have justified this Court's refusal of the State's petition in the first instance. The plurality, while reaching the same result as the Court of Appeals, has so varied the rationale as to lay the basis for future mischief.

The plurality seizes upon a 21-year-old legislative amendment to Article 37.07, V.A.C.C.P., merely defining "prior criminal record" (Acts 1967, 60th Leg., p. 1739, ch. 659, § 22, eff. Aug. 28, 1967) as the basis for now holding that the only evidence that may be permitted at the penalty stage of a bifurcated trial as limited to "prior criminal record of the defendant, his general reputation and his character." The plurality also would find that by such amendment the 21-year-old *Allaben* has been "rendered ... of no precedential value on the narrow issue of admissibility of unadjudicated extraneous offenses solely to meet a defendant's application for probation." *Allaben,* of course, did not deal with unadjudicated offenses. *Allaben* held that the trial court should have allowed the defendant, a sex offender, to show at the penalty stage of the bifurcated trial that he had sought psychiatric treatment for sexual problems when the motion for probation was before the jury. The error was however held to be harmless.

The plurality overlooks the history of the bifurcated trial system in Texas. The unitary trial system long prevailed in Texas in felony cases where the plea of not guilty was before the jury. See Article 693, V.A. C.C.P. (1925), and its forerunners. In such cases the jury determined the guilt, and if necessary, the punishment in a one stage trial with one jury charge. The unitary trial system and the language of said Article 693 was retained in § 1 of Article 37.07 in the early drafts of the State Bar Committee's work on the 1965 Revision of the Code of Criminal Procedure. In § 2 of the proposed draft was an "Alternative Procedure," a bifurcated trial procedure, to be used only within the discretion of the trial judge and with consent of both parties in felony jury cases where the plea was not guilty. It provided that either the State or the defendant "may" independently at the penalty stage of the trial introduce evidence of the defendant's prior criminal record, his character or reputation. Such "Alternative Procedure" was to provide an experimental basis for future legislation. The proposal was made in response to constant criticism that the unitary system blindfolded the jury as to the defendant's prior criminal record and to the outrage of jurors who first learned of the defendant's prior convictions after verdict and learned that such had been inadmissible.

Somewhere in the legislative process a crucial phrase was deleted from § 1 of the proposed statute, and the unitary trial system was gone with the wind. The "Alternative Procedure" became "the" procedure though the 1965 version of Article 37.07, § 2, retained the "Alternative Procedure" label.

The term "prior criminal record" was not defined but this oversight was corrected by the said 1967 amendment. Neither in the 1965 nor the 1967 version of the statute did the Legislature expressly state that the only evidence either party may offer at the penalty stage of trial is the defendant's prior criminal record (as now defined), his character or reputation. It could have easily done so if that was its intention. The law was basically unchanged at the time of appellant's 1984 trial. If the law was changed by the 1967 amendment to Article 37.07 merely defining "prior criminal record," then the plurality fails to explain how a defendant may introduce evidence of temporary insanity caused by intoxication in mitigation of penalty, V.T.C.A., Penal Code, § 8.04, or how a defendant may establish by evidence before the jury his eligibility for probation under Article 42.12, § 3a(a), supra. Of course, there may be other examples.

Article 37.07, supra, applies in many contexts. It is not limited to situations where the defendant has filed his motion requesting probation at the hands of the jury. Where that situation occurs, however, under Article 42.12, § 3a(a), supra, the sworn motion must show and the proof must support the fact that the defendant has never been convicted of a felony in this or any other state. Thus the defendant must establish eligibility for probation before the jury in order to be entitled to probation. To favorably persuade the jury to grant probation is the defendant limited to mere evidence of his eligibility? While Article 42.12, § 3a(a), supra, requires evidence of eligibility it does not prohibit other evidence by the defendant as to his background and evidence indicative of his successful completion of probation if granted.

Where a motion for jury given probation is involved then any interpretation of Articles 37.07 and 42.12, supra, must be considered in light of the history of and the cases decided under the Suspended Sentence Law (Articles 776–780 incl. V.A.C.C.P.—1925) as well as the history of the Adult Probation Laws in Texas prior to the 1965 Code of Criminal Procedure (Acts 1947, 50th Leg., p. 1049, ch. 452—codified as Article 781b, V.A.C.C.P.—1925 and Acts 1957, 55th Leg., p. 466, ch. 226, codified as Article 781d, V.A.C.C.P.—1925).

The Suspended Sentence Law was first enacted in 1913 permitting juries to grant suspended sentences in certain felony cases under certain conditions. In 1931 judges were permitted to grant suspended sentences (Acts 1931, 42nd Leg., ch. 43, § 4—See Article 776a, V.A.C.C.P.—1925). Articles 776, 776a and 778, V.A.C.C.P.—

1925, provided that a defendant, before the judge or jury, as the case might be, must establish his eligibility for a suspended sentence (no prior felony conviction) and provided in the unitary trial then in existence that evidence was limited to "the general reputation of the defendant" which was interpreted to mean the reputation for being a peaceable and law-abiding citizen. See *Campbell v. State*, 73 Tex.Cr.R. 198, 164 S.W. 850 (1914); *Long v. State*, 120 Tex.Crim. 373, 48 S.W.2d 632 (1931). See generally 16 Tex.Jur.2d, Criminal Law, §§ 432–438, pp. 673–687.

Probation, on the other hand, first appearing in Texas in 1947, could only be given by the trial judge, a traditional characteristic of probation. While the defendant was required to establish his eligibility for probation (no prior felony conviction) there was no express statutory limitation on the evidence to be offered on the issue involved as in the case of a suspended sentence. Probation could only be given "following conviction or a plea of guilty." The trial court at the time could not entertain a plea of not guilty in a felony case. A jury had to be empaneled. Upon hearing guilty pleas and considering motions for probation, however, the trial court often heard evidence offered by a defendant as to his "suitability" for probation as well as his eligibility. See *Roy v. State*, 319 S.W.2d 705 (Tex.Cr.App.1959). See and cf. *Cleveland v. State*, 502 S.W.2d 24 (Tex.Cr. App.1973).

It was not unusual under the former probation statutes for a defendant to offer to the court evidence from parents, other family members, ministers, former teachers, former or prospective employers, doctors, and even probation officers, etc., all in support of his motion for probation. Reputation witnesses were also utilized by both parties as in suspended sentence cases. The most common witness was usually the defendant himself. Where the defendant

sought to establish his eligibility for probation the State was permitted to show a prior felony conviction, if any, and to call witnesses as to the defendant's "bad" reputation, and to cross-examine defense witnesses. The State was limited in impeaching the defendant or witnesses by the terms of Article 732a, V.A.C.C.P. (1925), now Article 38.29, V.A.C.C.P. (1965). Only final convictions, a suspended or probated sentence could be utilized for impeachment. The general rule at trial was that extraneous unadjudicated offense evidence could not be used for impeachment or otherwise on the issue of probation.[1] Of course, where the defendant attempted to leave a false impression as to his background or opened the door by claiming he never had been in trouble with the police, had no arrest record, etc., then it was legitimate for the State to prove otherwise. Cf. *Nelson v. State*, 503 S.W.2d 543, 545 (Tex.Cr. App.1974); cf. also *Shipman v. State*, 604 S.W.2d 182 (Tex.Cr.App.1980); *Carter v. State*, 550 S.W.2d 282 (Tex.Cr.App.1977); *Reese v. State*, 531 S.W.2d 638 (Tex.Cr. App.1976).

In 1965 in order to secure the repeal of the supposedly abused Suspended Sentence Law it was necessary to revise the probation laws in the new Code of Criminal Procedure to permit juries to grant probation as well as judges. See now Article 42.12, § 3a(a), supra. The required sworn motion procedure of the Suspended Sentence Law found its way into the probation laws, but the statutory limitation of evidence to reputation testimony did not. These changes were all made at the same time as the original enactment in 1965 of Article 37.07, applicable at the time only to pleas of not guilty in jury cases. This history must be considered in arriving at a proper rationale.

In the instant 1984 case, considering the law then applicable, Justice Allen for the Dallas Court of Appeals re-utilized the proper rationale and reached the right result.[2] The plurality has drifted far afield

---

1. However, where the trial court utilized a presentence report as authorized by the Adult Probation Laws in passing upon the question of probation the extraneous unadjudicated offenses, etc., were before the court.

2. The appellant offered only evidence as to his eligibility for probation—that he had not previously been convicted of a felony. This alone did not entitle the State to offer the details of extraneous unadjudicated offenses. Appellant

in reaching the same result but in devising a strained new rationale in relying on a misinterpretation of a 21–year–old legislative amendment and seeking to undermine *Allaben.*

I concur in the result reached but certainly not the reasoning of the plurality.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

The issue in this cause is whether unadjudicated extraneous offenses are admissible for a jury to consider in assessing punishment and recommending probation when a defendant applies for probation, pleads not guilty but is found guilty, and then testifies in support of his application.

Appellant was found guilty of murder; the jury assessed his punishment at confinement for life and, of course, did not recommend probation.

After the jury returned its verdict of guilt the trial judge promptly convened a punishment hearing, and called for announcements. The prosecution announced that "the State will rest on punishment." Thereafter, in substance the court of appeals found the following occurred: Appellant took the stand, stated his name and testified in response to only three questions that he is the person the jury had just found guilty, that he had not before been convicted of a felony offense anywhere and that he had never been placed on felony probation. The prosecution chose not to question him. Appellant rested. Then, outside the presence of the jury, under-

standing that the State intended to call five witnesses to testify to unadjudicated extraneous offenses allegedly committed by appellant, over his proper objection the trial judge ruled the evidence would be admissible, explaining his reasoning, *viz*:

"[T]hat extraneous offenses, if shown to have occurred within a reasonably recent period, would be admissible in the punishment hearing, bearing on the proposition only, as to whether or not the defendant is *a proper person to have on the street on probation*, or should in fact, be in the penitentiary, and *not bearing on any other part of the punishment.*" [1]

Accordingly, the trial court permitted the prosecution to adduce evidence of five prior unadjudicated offenses, the oldest of which had been committed some six months before the instant offense, *viz*: a purse snatching robbery; driving while intoxicated by sniffing paint; fleeing officers in a three county chase under influence of inhaling paint; a misdemeanor assault by near strangulation, followed within an hour by an arrest for public intoxication from sniffing paint. With that, both parties closed.

The charge of the court instructed the jury on its functions "if you *desire in your discretion as jurors* to recommend probation in this case." [2]

The Dallas Court of Appeals noted the trial court had admitted the evidence "on the basis that it was relevant to the accused's application for probation," and that the State defends that ruling on the same basis. It found "currently clear that, as a

---

left no false impression with the jury. The State's witnesses used, if qualified, might have properly testified as to the appellant's "reputation for being a peaceable and law-abiding citizen and that it was 'bad.'" The State, however, did not use this approach.

**1.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**2.** Moreover, consistent with his ruling for the court, the judge placed in the charge a limiting instruction, *viz:*

"You are further instructed that if there is any *testimony* before you in this case regarding the defendant's having committed of-

fenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining whether to recommend to the Court that the defendant be given probation in this case, and you shall not consider any such testimony, if any, for any other purpose."

The charge then enumerated twelve conditions of probation "the Court may impose," essentially the first eleven in § 6(a), and that he pay a monthly probation fee.

general rule, evidence of unadjudicated extraneous offenses is inadmissible under article 37.07," and held the general rule controlled in the instant case. *Allaben v. State*, 418 S.W.2d 517 (Tex.Cr.App.1967), upon which the State relied, was found distinguishable on its facts in that there the defendant was offering to show he had sought psychiatric treatment for his sexual problems, and the opinion "does not deal with the admission of an unadjudicated extraneous offense." It also alluded to "false impression" cases and "fair determination" notion of *Davis v. State*, 478 S.W.2d 958 (Tex.Cr.App.1972), distinguished them and concluded, "The unadjudicated offense testimony admitted by the trial court was admitted in violation of article 37.07(3)." *Murphy v. State*, 700 S.W.2d 747 (Tex.App.—Dallas 1985).

We granted review of that decision to examine the State's primary contention that "an application for probation, this alone put into issue [appellant's] *suitability* for probation and, as such, made relevant that evidence showing his likely future criminal conduct." State's Petition for Discretionary Review, p. 7. Tex.R.App. Pro. Rule 200(c)(1), (2) and (3).

### I.

As the court of appeals observed, it is currently considered the "general rule" that neither unadjudicated bad acts, nor the details of adjudicated offenses, may be admitted at the punishment phase in a noncapital prosecution. E.g., *Ramey v. State*, 575 S.W.2d 535 (Tex.Cr.App.1978); *Sherman v. State*, 537 S.W.2d 262 (Tex.Cr.App. 1976); *Lege v. State*, 501 S.W.2d 880 (Tex. Cr.App.1973); *Mullins v. State*, 492 S.W.2d 277 (Tex.Cr.App.1973). This general rule derives from V.A.C.C.P., Article 37.07, § 3(a), which at the time of trial in this cause read as follows:

"(a) Regardless of *the plea and* whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as

to the prior criminal record of the defendant, his general reputation and his character. *The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged."* [3]

This provision had its genesis in the 1965 Code of Criminal Procedure, wherein also, by other provisions of Article 37.07, supra, bifurcation of jury assessments of guilt and punishment was accomplished for the first time.

In *Allaben v. State*, supra, the Court remarked that evidence admissible at the newly created punishment phase of trial:

"is by no means limited to the defendant's prior criminal record, his general reputation and his character. Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible."

*Id.*, at 519. In subsequent cases the Court held unadjudicated extraneous offenses admissible on authority of *Allaben*, supra, where application for probation was made. For example, in *Davis v. State*, supra, the defendant testified at the punishment phase of trial that he had not realized his companion had intended to commit robbery until he actually pulled a gun on a loan officer. The State was allowed to rebut this testimony with evidence the defendant had committed a robbery at a loan company only a month before. This Court perceived no error, observing:

"While the general rule is that specific acts of misconduct by the accused which have not resulted in final convictions cannot be admitted, this court has been reluctant to exclude legally admissible evidence which is relevant to a fair determination of an accused's application for probation. *Allaben v. State*, supra; *Santiago v. State*, [444 S.W.2d 758 (Tex. Cr.App.(1969)]. See also *Rendon v.*

---

3. In 1967 the statute was amended to move this provision from § 2(b), where it had appeared in the 1965 version, and to add the underscored language, rendering the provision applicable

"[r]egardless of the plea," and defining "prior criminal record." Acts 1967, 60th Leg., p. 1739, ch. 659, § 22, eff. Aug. 28, 1967.

*State,* 170 Tex.Cr.R. 548, 342 S.W.2d 317; *Ward v. State,* 160 Tex.Cr.R. 232, 268 S.W.2d 465."

*Id.* at 959. In *Cleveland v. State,* 502 S.W.2d 24 (Tex.Cr.App.1973), the defendant filed an application for probation and testified in support thereof, not only that he had never before been convicted of a felony, but also that he had been honorably discharged from the military and enjoyed a good work record and family life. On crossexamination the State was allowed to elicit the defendant's admission that he had purchased marihuana on a prior occasion. Discerning no error in this, the Court observed:

"The issue of probation for this [defendant], who had plead guilty to the possession of marihuana, was squarely before the jury. We are not dealing here with ... testimony which was not proper under Article 37.07, [supra]. Other issues can become involved rendering relevant testimony admissible."

*Id.,* at 26. See also, *McCrea v. State,* 494 S.W.2d 821, 825 (Tex.Cr.App.1973); *Holmes v. State,* 502 S.W.2d 728, 729 (Tex. Cr.App.1973); *Basaldua v. State,* 481 S.W.2d 851, 854 (Tex.Cr.App.1972).

The State maintains that the court of appeals erred in interpreting these cases, along with *Davis v. State,* supra, to hold that only after appellant first attempts to create a false impression as to his "suitability" for probation may the State, in the interest of obtaining a "fair determination," respond with proof of unadjudicated specific acts of misconduct, to counter that impression.[4] We believe a reasoned approach to resolution of this issue involves

more than just a recapitulation of these particular cases. An understanding of the history of admissibility of evidence relative to punishment in Texas is also useful, and to that we now turn.

## II.

With enactment of the first constitutionally valid suspended sentence law in 1913, see Acts 1913, 33rd Leg., p. 8, ch. 7,[5] this Court was confronted for the first time with questions of admissibility of character evidence bearing specifically and exclusively upon a punishment issue in a unitary trial. Before that time it was "always admissible for [the accused] to prove that his character was such as to make it unlikely that he would have perpetrated the act charged upon him." Wharton's Criminal Evidence, § 57 (9th ed. 1884). Proof of character to this end was limited to evidence of the accused's good reputation for a particular character trait, *id.,* § 60, "character" being deemed essentially "convertible" with "reputation," *id.,* § 58; *Brownlee v. State,* 13 Tex.App. 255 (1882). Only after the accused had admitted evidence of his good reputation as to a particular character trait could the State respond with character evidence; and then, only in kind, with evidence the accused suffered a bad reputation for that same trait of character. See generally, Branch's Annotated Penal Code, § 148, p. 84 (1st ed. 1916). Like the accused, the State was prohibited from adducing evidence of particular misconduct to prove character. *Wharton's,* supra, § 61; *Holsey v. State,* 24 Tex.App. 35, 42, 5 S.W. 523 (1887); *Thompson v. State,* 38 Tex.

**4.** The court of appeals opined:
"The context of [*Davis v. State,* supra,] makes it clear that the key phrase in [the passage excerpted above] is 'fair determination,' and the key word is 'fair.' It would not be fair to allow a defendant to mislead the jury about the merits of his application for probation. If the State must bring in extraneous offenses to dispel the false impression, then the necessity of a 'fair' determination on the application for probation allows it to do so. But in the present case there is no contention that appellant had misled the jury and that the introduction of the extraneous offenses was necessary to dispel the false impression."

700 S.W.2d at 749–50. Indeed, two of the cases cited in *Davis,* supra, are pre–1965 "false impression" cases, dealing with admissibility of extraneous acts to rebut defensive assertions an accused has never been in trouble before. *Ward v. State* and *Rendon v. State,* both supra. See *Hammett v. State,* 713 S.W.2d 102, at 105–6 (Tex.Cr.App.1986), and cases cited therein.

**5.** For a brief history of the origins of suspended sentence law, see *Ex parte Renier,* 734 S.W.2d 349, at 366, n. 21 (Tex.Cr.App.1987) (Teague, J., dissenting).

Cr.R. 335, 42 S.W. 974, 977 (1897).[6] As is the case today, the State sometimes *could* admit specific misconduct if its relevancy lay in its tendency to establish some material issue in the case, independent of whatever tendency it might also have had to establish some detrimental trait of the accused's character *per se*. But whatever relevance specific misconduct may have had in aid of *assessment of punishment* was overshadowed in the unitary procedure by these rules preserving rights of the accused to a determination of his guilt or innocence absent uninvited "character/reputation" evidence.

In 1913 the Legislature enacted the Suspended Sentence Law. Pursuant to that act, the accused could file written sworn application for suspended sentence in all but certain enumerated felony offenses. Should the jury assess a term of punishment not exceeding five years, and find the accused had never before been convicted of a felony, it could recommend his sentence be suspended, and the trial court was obliged to follow that recommendation. Art. 776, V.A.C.C.P. (1925). Furthermore, once an application for suspended sentence was filed, the trial court was required to "permit testimony as to the general reputation of defendant to enable the jury to determine whether to recommend the suspension of sentence[.]" Art. 778, V.A.C.C.P. (1925).[7] For purposes of this provision, "general reputation" meant, exclusively, reputation of the accused for being peaceable and lawabiding. *Campbell v. State*, 73 Tex.Cr.R. 198, 164 S.W. 850

(1914); *Long v. State*, 120 Tex.Cr.R. 373, 48 S.W.2d 632 (1932). Evidence of a reputation for peaceableness, though a statutory consideration, was not deemed a prerequisite to jury recommendation of a suspended sentence. *Martin v. State*, 122 Tex.Cr.R. 174, 54 S.W.2d 812 (1932).

Caselaw construing these provisions made clear that, whenever application for suspended sentence was made, the old rule prohibiting the State from initiating inquiry into the character of the accused, no longer applied. The application itself put the accused's "reputation" in issue. E.g., *Overby v. State*, 92 Tex.Cr.R. 172, 242 S.W. 213 (1922). The very earliest cases, in fact, seem to indicate a belief that by putting "reputation" in issue, the statute authorized any "evidence of the character of life [the accused] has lived in the past ... to enable the jury to determine whether or not the clemency should be extended." *Williamson v. State*, 74 Tex.Cr.R. 289, 167 S.W. 360, 362 (1914). See, e.g., *Martoni v. State*, 74 Tex.Cr.R. 90, 167 S.W. 349 (1914); *Conatser v. State*, 75 Tex.Cr.R. 91, 170 S.W. 314 (1914). To the extent these cases supported the proposition that specific acts could be proved in aid of the jury's determination whether to recommend a suspended sentence, however, they were soon undermined. Beginning with *Baker v. State*, 87 Tex.Cr.R. 305, 221 S.W. 607 (1920), the Court opined that, though alone placing the accused's "reputation" in issue, the new legislation did not purport to affect rules governing methods of proof. "The passage of the [Suspended Sentence] law did not change the rule touching the manner of

---

**6.** Distinguishable, then as now, were two permissible uses for specific misconduct. First was the use of a conviction, or the pendency of an indictment or complaint, for a felony or other offense involving moral turpitude, to attack the character for truth and veracity of an accused who has testified in his own behalf. *Widener v. State*, 109 Tex.Cr.R. 423, 5 S.W.2d 138 (1928); Branch's Annotated Penal Code, § 167, p. 101 (1st ed. 1916). Today, of course, only final convictions for such offenses may be put to this use. E.g., *Ochoa v. State*, 481 S.W.2d 847 (Tex. Cr.App.1972). Second, specific conduct could form the basis for questions testing the knowledge of a reputation witness on crossexamination. *Forrester v. State*, 38 Tex.Cr.App. 245, 42 S.W. 400 (1897); *Holloway v. State*, 45 Tex.Cr.R.

303, 77 S.W. 14 (1903); Branch's Annotated Penal Code, § 184, p. 117 (1st ed. 1916). Compare *Rutledge v. State*, 749 S.W.2d 50 (Tex.Cr.App. 1988).

**7.** In the same Senate Bill by which the Legislature first authorized entry of guilty pleas before the trial court, without a jury, the Suspended Sentence Law was also amended to empower the court, when application is made, to suspend sentence, given satisfaction of the same predicate upon which a jury could make that recommendation. Acts 1931, 42nd Leg., p. 65, ch. 43, § 4, eff. Aug. 22, 1931; Art. 776a, V.A.C.C.P. (1925). Reputation testimony was permissible under this provision as well.

proving the reputation." *Moore v. State,* 91 Tex.Cr.R. 118, 237 S.W. 931, 933 (1922). The Court held, accordingly, that specific acts of misconduct were "not admissible as directly combating the good reputation of the accused." *Skelton v. State,* 106 Tex. Cr.R. 90, 291 S.W. 238, 240 (1927).[8] See also, *Bowman v. State,* 98 Tex.Cr.R. 349, 265 S.W. 1038 (1924); *Pettiett v. State,* 100 Tex.Cr.R. 255, 272 S.W. 473 (1925). Nor was the accused permitted to use particular acts of conduct to prove his good reputation. *Wagley v. State,* 87 Tex.Cr.R. 504, 224 S.W. 687 (1920); *Brown v. State,* 92 Tex.Cr.R. 147, 242 S.W. 218 (1922). So disinclined was the Court to allow evidence of extraneous acts that even when the accused managed to put in evidence of specific good conduct, it was ruled error to permit the State to counter with evidence of bad, over objection. Having failed to object to impermissible evidence from the accused, the Court held, the State could not compensate with otherwise impermissible evidence of its own. *Johnson v. State,* 91 Tex.Cr.R. 582, 241 S.W. 484 (1922) (Opinion on rehearing); *Merritt v. State,* 124 Tex. Cr.R. 42, 60 S.W.2d 792 (1933); *Williams v. State,* 130 Tex.Cr.R. 86, 91 S.W.2d 709 (1936). Cf. *Jackson v. State,* 155 Tex.Cr.R. 466, 236 S.W.2d 623 (1951); *Seay v. State,* 395 S.W.2d 40 (Tex.Cr.App.1965).

The first Adult Probation Act appeared, as Art. 781b, V.A.C.C.P., in 1947. Acts 1947, 50th Leg., p. 1049, ch. 452. Under this act only the trial court could grant probation, and then only "where the maximum punishment assessed ... does not exceed ten (10) years imprisonment." Reminiscent of the still extant Suspended Sentence Law, the new probation statute

required proof of no previous felony conviction; unlike the former, however, the probation statute did not expressly authorize admission of character evidence in any form. One possible explanation for this omission is that it was expected the trial court would routinely exercise the statutory alternative, provided in Art. 781b, § 2, supra, to direct a probation officer to "fully investigate and report to the court in writing the circumstances of the offense, criminal record, social history and present condition of the defendant." Such a report would altogether obviate any need to inquire into the character of the accused in the unitary trial, and thus there would be no call to legislate evidentiary parameters. At any rate, while remarking that whether to give probation was a matter within the "sound," and evidently unreviewable discretion of the trial court, e.g., *Baker v. State,* 151 Tex.Cr.R. 454, 209 S.W.2d 769 (1948); *Stratmon v. State,* 169 Tex.Cr.R. 188, 333 S.W.2d 135 (1960), the Court apparently never found occasion to write on the question of admissibility of evidence at trial bearing on the court's decision to grant probation.[9] In practice, it appears evidence was admitted as to, if not precisely the character of the accused, *per se,* at least his characteristics, *viz.,* lack of prior "trouble," employment history, youth, and "reputation." See, e.g., *Baker v. State,* supra; *Roy v. State,* 167 Tex.Cr.R. 307, 319 S.W.2d 705 (1959).

In 1957 the Adult Probation Act was amended and recodified as Article 781d. Acts 1957, 55th Leg., p. 466, ch. 226. The amendments are not material to our present discussion.

---

**8.** As before, however, "have you heard" questions were allowed in crossexamination of reputation witnesses. *Skelton v. State,* supra; *Turner v. State,* 109 Tex.Cr.R. 301, 4 S.W.2d 58 (1928); *Stewart v. State,* 148 Tex.Cr.R. 480, 188 S.W.2d 167 (1945).

**9.** By 1947 the trial court was authorized to hear a guilty plea and assess punishment in a felony trial, see Acts 1931, 42nd Leg., p. 65, ch. 43. The accused could not plead not guilty to the trial court in a felony prosecution, however, until the advent of the 1965 Code of Criminal Procedure, wherein former Art. 11, V.A.C.C.P.

(1925), was amended, *inter alia,* by adding the word "capital," *viz:*

"The defendant in a criminal prosecution for any offense may waive any rights secured him by law except the right of trial by jury in a *capital* felony case...."

Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722. Thus, in a trial upon a not guilty plea, the jury could remove any possibility of probation by assessing punishment in excess of ten years. We have found no case, however, involving admissibility of evidence to persuade the jury to assess a term of punishment that would preclude the trial court from granting probation.

With the new Code of Criminal Procedure in 1965 came radical changes in punishment procedure. The biggest innovation was the bifurcation of most criminal trials before a jury on a plea of not guilty into two stages, the first to determine guilt or innocence of the accused, and the second, where a guilty verdict is returned, to assess punishment. This was accomplished by substantial amendment to former Art. 693, V.A.C.C.P. (1925), and recodification as Article 37.07 of the new Code, with further amendments in Acts 1967, 60th Leg., p. 1739, ch. 659, § 22. As former Presiding Judge Onion observed in *Brumfield v. State*, 445 S.W.2d 732 (Tex.Cr.App.1969), the new procedure:

> "involved splitting the trial on the issues of guilt and punishment and provided that at the penalty stage of the proceedings whether the asessor of punishment be the same jury or the judge, either side could offer evidence of the defendant's prior criminal record, his character or reputation. Such procedure was obviously designed to take the blindfolds off the judge or jury when it came to assessing punishment. It authorized the introduction of evidence on punishment not heretofore held to be generally admissible. It did, however, limit such introduction to the penalty stage to prevent the accused from being tried as a criminal generally prior to a determination of the issue of guilt. It thus allowed evidence critical to an enlightened determination of punishment but avoided the possibility of prejudice on the issue of guilt."

*Id.*, at 738. Under the new bifurcated scheme, at least two sorts of evidence became admissible at the punishment stage that could not have been admitted in a unitary trial. First, evidence of the "prior criminal record" of the accused, meaning, as per the 1967 amendment, "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged[,]" was authorized. Second, evidence could come in of the accused's "character." By this we interpret the legislature to have meant opinion testimony of the character of the accused, as distinct from character evidence in the form of "reputation." See *Hedicke v. State*, 779 S.W.2d 837 (Tex.Cr.App. decided this day) (Plurality Opinion). The Court has never construed Article 37.07, supra, expressly to authorize character evidence in the form of specific misconduct, except, of course, inasmuch as that misconduct has become a part of the "prior criminal record" of the accused. *Mullins v. State, Lege v. State*, and *Sherman v. State*, all supra. Thus it appears that specific conduct of the accused, good or bad, may not be admitted to prove "character," *per se*, even at the separate punishment proceeding.

Also in 1965 the Legislature repealed the Suspended Sentence Law, which had been "long subject to claims of abuse, either real or supposed[.]" Special Commentary, Article 42.12, V.A.C.C.P. At the same time, the Adult Probation Act was recodified as Article 42.12, and amended to allow juries to grant probation. Under the new Article 42.12, the trial court could grant probation regardless of whether the accused had a prior felony conviction. Before it could recommend probation, by contrast, a jury must find he had none. The requirement of a written sworn application was carried over from former Art. 776, supra; the provision in former Art. 778, supra, expressly putting "general reputation" "in issue," however, was not. Moreover, the Legislature provided nothing to equip the jury in its decision whether to recommend probation comparable to the report provided by earlier versions of the Adult Probation Act, and retained in 1965, to apprise the court of "circumstances of the offense, criminal record, social history and present condition" of the accused.

 From this background one thing is certain: that, whereas under the Suspended Sentence Law the State was allowed to initiate proof of character, but only in the form of "reputation" testimony, under its descendant, Article 37.07, § 3(a), supra, the State may present evidence of character at *any* punishment hearing, limited in form, however, to prior criminal record, and opinion or reputation testimony. Not immedi-

ately clear is whether, and if so what "other issues," besides character *per se*, "can become involved rendering relevant testimony admissible." *Cleveland v. State*, supra, at 26. Does Article 37.07, § 3(a), supra, define the permissible limits of admissible proof at the punishment phase of trial, or does it merely limit methods of proving character, leaving open whether evidence may be "relevant" to some other purpose? We next consider how admissibility of evidence at the punishment phase is to be determined in the current bifurcated scheme.

## III.

On original submission a plurality of the Court applied a test we have traditionally employed to determine admissibility of extraneous misconduct at the guilt or innocence phase of a criminal trial. According to this well-worn test, an extraneous act may become admissible if, quite apart from whatever probativeness it may have to show "character," it is relevant to a material issue in the case and its relevancy value outweighs its potential for prejudice. E.g., *Williams v. State*, 662 S.W.2d 344 (Tex.Cr. App.1984); *Morgan v. State*, 692 S.W.2d 877 (Tex.Cr.App.1985). This test reflects the broad precept that, subject to permissible methods of proof, which are generally more informed by considerations of reliability than relevance, admissibility of evidence is a function of relevancy. Relevancy depends, in turn, upon materiality. In other words, to borrow from the new Rules of Criminal Evidence, to determine whether evidence is "relevant," it is necessary to know whether it tends to establish or refute "some fact that is of consequence to the determination of the action." Tex.R. Crim.Evid, Rule 401.

In the old unitary trial, before 1965, the rule was applied in the context of extraneous offenses with a view to preventing juries from inferring guilt from proof that the accused was "a criminal in general."

Only if proof of an extraneous transaction supported some material inference other than one of character conformity was it admissible at trial. However, we know from, *inter alia, Brumfield v. State*, supra, that at least to some extent it is appropriate to consider the criminal character of the accused in assessing *punishment.* Otherwise the Legislature would not have permitted the State to invoke his criminal record, his infamy in the community, or individual opinions as to his bad character at the new punishment phase. How do we determine what else may be admissible at the punishment phase of trial?

Application of the traditional rule of admitting evidence, even of an extraneous offense, so long as it is "relevant" to a "material issue," is in most instances an unsatisfactory measure of whether evidence other than that expressly permitted by Article 37.07, § 3(a), supra, is admissible at the punishment phase. The problem lies in defining what the particular "issues" are that evidence may or may not be "relevant" to prove. We have remarked before that "[t]he material issue during the punishment phase is, obviously, what punishment to assess[.]" *Hoffert v. State*, 623 S.W.2d 141, 145 (Tex.Cr.App.1981). While that is indeed obvious, it is not especially helpful for purposes of deciding relevance.

The facts "of consequence" at the guilt phase of trial are narrowly drawn by or readily extrapolated from penal provisions and statutory justifications. An extraneous offense may be offered as proof of an ultimate fact, such as identity or culpable intent, or it may be offered to establish an evidentiary fact, such as motive, from which an ultimate fact may be inferred. In either case we know what the material issues are because the Legislature has supplied them. Thus we have a fixed point by which to navigate questions of relevance at the guilt phase of trial. The same is not true of the punishment phase. There, aside from certain exceptions,[10] the "fact-

---

**10.** For example, the State must prove that the *accused* has been previously convicted in order to enhance range of punishment under V.T.C.A. Penal Code, § 12.42. Where the jury's verdict does not already constitute an affirmative finding of use or exhibition of a deadly weapon, under *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App. 1985), and the issue has not been otherwise

finder" does not determine the existence of discreet facts. Deciding what punishment to assess is a normative process, not intrinsically factbound. Because the material issue at punishment is so indistinct, relevancy of proffered evidence cannot be determined by deductive processes. To extend the nautical metaphor, we have been given a rudder to steer, but no polestar to steer by.

In reality, what is "relevant" to determining proper punishment is more a question of policy than of logic. In creating the separate punishment proceeding in 1965, the Legislature clearly intended to remove the blinders inherent in a unitary trial. Unfortunately, outside of Article 37.07, § 3(a), supra, it has given no clear guidance as to what considerations should inform the jury's punishment decision.

We do know, nevertheless, that certain information has been widely regarded as "relevant" to assessment of punishment. It is axiomatic, for example, that punishment should fit the particular crime. Accordingly, the trial court routinely instructs the jury it may consider all evidence admitted at the guilt phase in making its punishment determination. Additional evidence of the circumstances of the offense may be admitted at the punishment phase, e.g., *Davis v. State*, supra, unless the proffered evidence bears only upon an issue necessarily resolved against the proponent by the guilty verdict, as in *Dixon v. State*, 506 S.W.2d 585 (Tex.Cr.App.1974). Modern penological thought also holds that, along with the circumstances of the offense, "[h]ighly relevant—if not essential—to ... selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949). These factors are not "relevant" in the sense that they tend to make more or less probable some identifiable issue of ultimate fact at the punishment phase. Calling circumstances of the offense and the offender "relevant" is really no more than to say we deem that information appropriate for the factfinder to consider in exercise of its unfettered discretion to assess whatever punishment within the prescribed range it sees fit. In the policy gap left by the Legislature, this Court has held evidence of "the circumstances of the offense itself or ... the defendant himself" to be admissible at the punishment phase. *Stiehl v. State*, 585 S.W.2d 716, 718 (Tex.Cr.App.1979).

■ Manifestly, one circumstance of the offender is his character. Although character is thus "relevant" at the punishment phase, as an appropriate consideration to inform the factfinder's discretion, admissibility of evidence of character qua character is nonetheless wholly circumscribed by Article 37.07, § 3(a), supra. From our synopsis of its history we have already determined that neither the State nor the accused may introduce evidence of specific unadjudicated conduct as proof of his character under this provision. We also find it untenable that specific acts may be admitted at the punishment phase to prove some circumstance of the offender *apart* from his character *per se*. Though bifurcation in 1965 removed the blinders and created the possibility for admission of evidence unimaginable in the prior unitary proceeding, in coming expressly to describe the new punishment vista the Legislature continued to speak in the familiar vernacular

---

submitted at the guilt phase of trial, that fact must also be proven at the punishment phase for the State to reap the benefit of Article 42.12, § 3g(a)(2) or Article 42.18, § 8(b), V.A.C.C.P. To obtain a recommendation of probation from a jury, an accused must plead and prove he has never before been convicted of a felony offense. Article 42.12, § 3a(a), V.A.C.C.P. The issue whether one accused of aggravated kidnapping released his victim alive and in a safe place may be submitted at the punishment phase, the burden apparently falling upon the accused, since

"proof of such release only mitigates punishment" under V.T.C.A. Penal Code, § 20.04(b). *Robinson v. State*, 739 S.W.2d 795, 797 (Tex.Cr. App.1987). Whenever a particular issue can be identified that is "of consequence" at the punishment proceeding, questions of burden of proof immediately come to mind. Significantly, no burden of proof has ever been assigned to the broad "issue" of what punishment to assess. See *Wright v. State*, 468 S.W.2d 422 (Tex.Cr.App. 1971).

of character. Thus, albeit in terms anachronistic from its inception, Article 37.07, § 3(a), supra, affords the only indicator of what the Legislature deemed *in* appropriate to the punishment decision, *viz*: specific conduct. It seems incredible that the Legislature would have bothered to limit proof of character *per se*, by excluding evidence of specific conduct to that end, while at the same time contemplating identical evidence would always be admissible as "relevant" to the broader category, circumstances of the offender. Loath to nullify the apparent legislative intent, we hold that Article 37.07, § 3(a), supra, precludes admission of specific conduct to show character or anything else under the rubric of circumstances of the offender at the punishment phase of trial, either in mitigation or aggravation of punishment.

This is not to say that evidence of the circumstances of the offender is limited to "character" evidence as permitted by Article 37.07, § 3(a), supra. The Court has recognized since *Allaben v. State*, supra, that other circumstances, such as his family background, religious affiliation, education, employment history and the like, are appropriate considerations in assessment of punishment. E.g., *Coleman v. State*, 442 S.W.2d 338 (Tex.Cr.App.1969); *Miller v. State*, 442 S.W.2d 340 (Tex.Cr. App.1969). But see *Thomas v. State*, 638 S.W.2d 481, 483, n. 6 (Tex.Cr.App.1982). In short, we reiterate that Article 37.07, § 3(a), supra, is not exhaustive in setting out evidence admissible at the punishment phase to show circumstances of the offender. We simply hold that it precludes evidence of specific acts of conduct for that purpose.

But the State does not argue appellant's extraneous misconduct in this cause is a circumstance of the offender, and for that reason is an appropriate punishment consideration. Rather, as we understand it, the State asserts that the specific misconduct admitted at appellant's trial was "relevant" to the specific question of his "suitability" for probation, which became a mate-

rial issue the moment he filed his sworn application. We agree that where it is clear the Legislature has put a specific fact in issue at the punishment phase, see e.g., n. 10, *ante*, evidence tending to prove or refute that fact should be admitted, irrespective of whether it also constitutes a form of character evidence that would otherwise be rejected under Article 37.07, § 3(a), supra. Thus we must decide whether, quite apart from general considerations of the offense and the offender, the Legislature has indicated that "suitability" for probation is necessarily a fact "of consequence" to the jury's decision whether to recommend probation. If so we would be constrained to hold that proof of specific misconduct is indeed admissible as evidence "relevant" to determining that fact, Article 37.07, § 3(a), supra, notwithstanding.[11]

## IV.

Where the offense is a felony and punishment does not exceed ten years, the Adult Probation Act provides, as it almost always has, that a judge may place a defendant on regular probation "when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public as well as the defendant will be subserved thereby." Article 42.12, § 3, V.A.C.C.P. Upon such findings granting probation is a matter of "absolute and unreviewable discretion" for the court. *Kemner v. State*, 589 S.W.2d 403, 409 (Tex.Cr. App.1979). However, the statute does not require that a jury make any such finding. Compare *id.*, § 3a(a): "the jury may recommend probation for a period of any term of years ... but in no event for more than ten years ... when the sworn motion and proof shall show, and the jury shall find in their verdict that the defendant has never before been convicted of a felony[.]"

Therefore, in considering a proper application for probation a jury must find that defendant has not previously been convicted of a felony, determine that an appropriate punishment is a term of years not more

---

**11.** Because it assumed, without deciding, that "suitability" for probation was a material issue at the punishment phase, the plurality on original submission was able to conduct its analysis of whether appellant's misconduct was "relevant" to that issue.

than ten and decide whether to recommend in its verdict that the court grant probation. Unlike findings a judge must make, the statute leaves to the jury an unbridled discretion to exercise in making its determination of punishment (within prescribed range) and its decision to recommend probation. *Kemner v. State*, supra, at 409.

Article 37.07, § 3(b), V.A.C.C.P., instructs that "the judge shall give such additional written instructions as may be necessary." When in prior versions Article 42.12, § 3a, supra, provided that upon recommendation of probation by a jury "the court may impose only those conditions which are set forth in Section 6 hereof," the Court found:

> "While it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if probation is recommended by the jury, the failure to so enumerate the said conditions is not harmful to the accused nor restrictive of the court's authority under the statute."

*Flores v. State*, 513 S.W.2d 66, 69 (Tex.Cr. App.1974). Even though the accused requested it, an utter failure to inform the jury of conditions of probation was not harmful to him or reversible error. *O'Neal v. State*, 421 S.W.2d 391, 396 (Tex.Cr.App. 1967).[12] The Court continued to adhere to *Flores*, finding that failure of the trial court to inform the jury in its charge of all conditions of probation which could be imposed should it recommend probation is not fundamental error, and that the charge as given, apparently listing some conditions, "adequately protected appellant's rights and that he was not harmed thereby." *Henderson v. State*, 617 S.W.2d 697, 700 (Tex.Cr.App.1981).

At a time when Article 42.12, § 3a, supra, limited the trial court to conditions then set forth in § 6, from *O'Neal* through *Flores* to *Henderson*, the Court neither explained why a failure to describe applicable conditions of probation is not harmful to a defendant, nor explicated the reason that it is "good practice" to enumerate conditions of probation in a punishment charge. The dichotomy is a puzzlement: if abject failure to inform the jury of appropriate conditions of probation is not reversible error, the reason must be that such information is not essential to enable a jury to exercise its discretion in the matter of recommending probation; yet the notion that it is "good practice" to so inform the jury seems to follow along the lines of the reasoning of the Court in *Kemner*, *i.e.*, that the jury is thus "guided" in exercising its discretion to decide whether to recommend probation be granted.[13]

---

**12.** Later, however, the Court refused to find a punishment charge fundamentally defective for failing to give a jury " 'minimum guidelines' to be followed in deciding whether or not to recommend probation," because what was contained in the charge was enough to inform the jury's discretion, *viz:*

> "The court's charge *in the present case*, in accordance with Article 42.12(B)(3a) [sic], supra, by instructing the jury to consider all the facts of the case together with the law submitted to it in the charge as well as the enumerated conditions to be followed by the defendant in the event probation was granted, enabled the jury to exercise its discretion on the question of whether or not to recommend probation for appellant. See *O'Neal v. State*, 421 S.W.2d 391 (Tex.Cr.App.1967) (Opinion on Appellant's Motion for Rehearing). Thus, we hold that the court's charge *in the present case* adequately protected the appellant's rights and he was not harmed thereby. Article 36.19, Vernon's Ann. C.C.P."

*Kemner v. State*, supra, at 409. The opinion has been read to mean "that possible conditions of probation *could* be submitted to the jury; the Court did not hold that they *had* to be." *Villanueva v. State*, 703 S.W.2d 244, 246 (Tex.App.—Corpus Christi 1985), no PDR history (emphasis by court of appeals). Finding the "correct rule of law stated in *Flores v. State*, 513 S.W.2d 66 (Tex.Cr.App.1974)," and since under Article 42.-12, § 6(a), "it is the trial court, not the jury," which determines conditions of probation, the court of appeals thought "there is no fundamental, overriding reason to submit them to the jury." Thus, the trial court did not err in refusing to include in its charge certain conditions of probation, as requested by appellant. *Ibid.* To the same effect is *Heathington v. State*, 705 S.W.2d 326, 329 (Tex.App.—Amarillo 1986), no PDR history.

**13.** Since that provision of § 3a limiting conditions of jury recommended probation to those contained in § 6 was deleted by Acts 1981, 67th Leg., Ch. 639, p. 2466, § 2, effective September 1, 1981, form charges appearing in acknowledged works have been modified.

A recognized writer formerly provided optional charges relative to probation: one stating its

Today, under Article 42.12, § 3a(a), supra, the law remains that whether to recommend probation is a decision wholly within the discretion of jurors. Also the law still is that a trial court need not inform the jury of any condition of probation. It follows that what those conditions may be is of no consequence when application for probation is made to a jury.[14] The jury is not there to predict future conduct. That one condition of probation is the defendant shall commit no offense against the law, therefore, is not germane to deliberations and to decision of a jury as to recommending probation.

Nineteen years ago the Court declared, "Requirements and the purpose of probation are a matter of law and common knowledge." *Logan v. State,* 455 S.W.2d 267, 270 (Tex.Cr.App.1970). The Adult Probation Act prescribes precisely when an applicant is qualified and how one becomes eligible to be considered by a jury for probation. The Act does not raise any other factual issue for the jury or suggest that jurors must conclude an applicant is "suitable" for probation; it contemplates the jury will merely exercise its discretion in determining whether to recommend probation.[15]

recommendation is "a matter that rests within the sound discretion of the jury" *sans* a list of conditions, and the other making no mention of discretion but enumerating all conditions extant as of 1979. He no longer suggests the latter. Compare McClung, Jury Charges for Texas Criminal Practice (Revised Edition, January 1981) 306–307, with McClung, *op cit.* (Revised Edition 1985) 278.

McCormick & Blackwell, Texas Criminal Forms and Trial Manual § 81.13, 8 Texas Practice 284–285, while noting that a failure to give it is not reversible error, presents a revised charge still with an enumeration, *viz:*

As pertinent here, the jury is told:

"In this case the defendant has filed [his sworn motion et cetera]. If the punishment assessed by you is not more than ten years … and you further find that he has not ever been convicted of a felony …, you may recommend the penitentiary time be probated for any term of years not to exceed 10 years, and if you assess a fine you may recommend [it be paid or probated].

The conditions of probation which this court may include, but shall not be limited to the following:

[first nine are listed with direction to add others "as authorized by statute and requested by the defendant or State"]

Probation must be granted by the court if the jury recommends it in their verdict. *If you do not DESIRE to recommend probation* you will say nothing about it in your verdict.

(For Concluding Instructions [such as arriving at amount of punishment "by a full, fair and free exercise of the opinion of the individual jurors" et cetera] see 81.05)."

**14.** Even when conditions of probation are enumerated, the stock charge does not give jurors even a slight hint about how the nine standard conditions first provided in § 6(a) may "guide" the jury in its deliberations on probation, particularly when jurors are also told that the trial court alone will determine the terms and condi-

tions actually imposed on defendant. Obviously those "rights" the Court often found were adequately protected by a failure fully to charge on applicable conditions do not include a "right" that the jury be told what to make of information that is given. Since an enumeration of conditions is not required in the first place, we believe an instruction on the statutory definition of probation, Article 42.12, § 1, V.A.C.C.P., will better serve to inform the exercise of its discretion.

**15.** Of uncertain significance is the fact that the Legislature has never authorized presentence investigation reports for jury scrutiny in considering whether to recommend probation. See now Article 42.12, § 4, V.A.C.C.P. Part of the United States Supreme Court's rationale for holding such reports do not violate federal due process guarantees was that:

"the modern probation report draws on information concerning every aspect of a defendant's life. The type and extent of this information make totally impractical if not impossible open court testimony with cross-examination. Such a procedure could endlessly delay criminal administration in a retrial of collateral issues."

*Williams v. New York,* 337 U.S. at 250, 69 S.Ct. at 1084–85, 93 L.Ed. at 1343–44. Perhaps in failing to expressly provide juries with a presentence report in 1965, the Legislature assumed that by ordinary evidentiary principles any evidence "relevant" to the accused's "suitability" for probation would come in at the punishment phase. In view of the language in *Williams* above, however, there is another way to construe the Legislative silence *vis-a-vis* information appropriate to the jury's probation decision. Conceivably the Legislature simply believed that no more evidence was practical or necessary to inform the jury's discretion whether to recommend probation than was already contemplated as admissible to show circumstances of the offender—as circumscribed by Article 37.07, § 3(a), supra.

With a heightened public awareness about such matters, surely jurors today approach their deliberations and determination with a common knowledge and appreciation that an ultimate societal objective of probation a jury is being asked to recommend is rehabilitation of the probationer. *Sanders v. State,* 580 S.W.2d 349, 352 (Tex. Cr.App.1978). Yet, its sole function is to recommend, leaving first to good judgment of the trial judge what conditions will be imposed, and then to trained and experienced supervising adult probation officers enforcement of those behavioral restraints and requirements against the probationer to the end that rehabilitation is achieved.

From evidence leading to the jury's own finding of guilt jurors well know that defendant engaged in conduct violative of the law, and they learn much about applicant as a person from that criminal conduct and other evidence adduced by the parties pertaining to the circumstances of the offender, including his character. The jury comes to understand that applicant has never before been convicted of a felony in this or any other state—such inquiry having been expressly put in issue by Article 42.12, § 3a, supra. It may hear general testimony concerning applicant from a variety of persons about background, family, employment and the like. As we have explained, see part III., *ante,* this latter evidence does not bear on any particular "issue," for there is none the jury must resolve. Rather, the testimony is available for such consideration as the jury may give in assessing punishment and considering probation. Its unfettered discretion thus informed, the jury makes its determination as to whether to recommend probation.

Accordingly, we hold that whether past criminal conduct by an applicant for probation may reveal a trait or propensity to violate the law is not relevant to a material issue tendered by an application for probation in a punishment proceeding before a jury. For that matter, neither is a selfserving declaration by applicant that he will not violate the law if placed on probation. The theory on which the trial court allowed the prosecution to present "rebuttal" evidence is untenable.

V.

■ The court of appeals construed the language in *Davis v. State,* supra, to allow proof of extraneous misconduct where it is necessary to a "fair determination of an accused's application for probation." 478 S.W.2d at 959. We agree that the parties may "open the door" to admission of specific conduct at the punishment phase; this is so, in fact, regardless of whether application for probation is made.

When an accused elicits testimony of specific good conduct in an attempt to support a later jury argument that he deserves a lenient sentence, or is "suitable" for probation, a State's objection will be well taken. Likewise, the accused can prevent the State from proving in the first instance unadjudicated bad acts or the details of crimes resulting in convictions as a basis for urging the jury to deny probation or punish harshly. At its option, however, the opponent of such evidence may forgo objection with a view to eliciting other evidence of specific conduct to rebut it. By tendering the evidence in the first instance the proponent has in effect consented to admission of specific acts of conduct to inform the jury's discretion in deciding both what punishment to assess, and whether to recommend probation. He will not be heard to complain of rebuttal evidence of like kind. Thus, for example, an accused who initiates evidence of specific conduct at the punishment phase, or shows in the first instance that he has never been "in trouble" before, or that he can comply with the law if placed on probation, has "opened the door" to rebuttal evidence which may include proof of specific bad acts. See, e.g., *Hamilton v. State,* 480 S.W.2d 685 (Tex.Cr.App. 1972); *Valerio v. State,* 494 S.W.2d 892 (Tex.Cr.App.1973). Cf. *Hammett v. State,* 713 S.W.2d 102 (Tex.Cr.App.1986).[16]

---

**16.** In *Hammett* the Court highlighted the impeachment function of such evidence, to attack the truth and veracity of the testifying accused.

Whether the accused has been in trouble before is usually a collateral matter at the guilt phase of trial. Nevertheless, where the accused vol-

We have not forgotten that in cases decided prior to 1965, under the Suspended Sentence Law, the State could not prove "reputation" via specific conduct just because it chose not to object to specific conduct evidence from the accused. See p. 60, *ante.* Obviously the Court's paramount concern in those cases was to avoid undue prejudice infecting the determination of guilt or innocence in the unitary proceeding. No such danger of contamination exists at the punishment phase in the current bifurcated scheme, and we see no reason the parties may not "open the door," effectively agreeing that specific conduct is an appropriate jury consideration in assessment of punishment, in spite of Article 37.07, § 3(a), supra.

To the extent prior cases have indicated, however, that evidence that is admissible to show circumstances of the offender, but does not amount to specific conduct, will automatically "open the door" to evidence of specific conduct in rebuttal, simply because application for probation has been made, they are disapproved. E.g., *Cleveland v. State,* supra, discussed *ante* at p. 58; *Baxter v. State,* 645 S.W.2d 812 (Tex. Cr.App.1983) (Plurality Opinion).

■ Appellant testified only that he had not been previously convicted or placed on felony probation, in strict satisfaction of the probation eligibility requirement. The court of appeals found that appellant made proper objection to the five extraneous offenses admitted against him. Under these circumstances it cannot be said appellant opened the door to admission of specific

acts of misconduct, and the trial court erred in admitting them.

Accordingly, the judgment of the court of appeals is affirmed.

TEAGUE, Judge, concurring.

Gary Lynn Murphy, henceforth appellant, was convicted by a jury of committing the offense of murder, by intentionally killing his wife. The jury assessed punishment at life imprisonment and a $10,000 fine. The facts at the punishment stage of the trial, which is governed by Art. 37.07, V.A.C.C.P., reflect that appellant took the stand and proved up his application for probation. In doing so, appellant merely testified that he had not previously been convicted of a felony in Texas, any other State of the Union, or in any federal jurisdiction. No other witnesses testified on behalf of appellant. The State, over objection, was permitted to present five witnesses who testified that appellant had committed both felony and misdemeanor criminal offenses for which appellant's guilt had not been adjudicated. The trial judge admitted these extraneous unadjudicated criminal offenses on the basis that they were relevant to appellant's application for probation.

The Dallas Court of Appeals held that the trial court committed reversible error by admitting into evidence the testimony about the unadjudicated extraneous criminal offenses. In so holding, the court of appeals rejected the State's argument that under this Court's decision of *Allaben v. State,* 418 S.W.2d 517 (Tex.Cr.App.1967), and *Allaben's* progeny [1], the unadjudicated

---

unteers that he has never been in trouble, the State may "expose that falsehood" to show "he is likely to have lied or been in error in the balance of his testimony—those aspects of his testimony that *are* relevant to material issues in the case." 713 S.W.2d at 105–06.

Here, by contrast, in declining to object to specific conduct evidence at the punishment phase, the opponent evinces a willingness that specific conduct become a substantive consideration in exercise of the jury's discretion to assess punishment and recommend whether to grant probation, despite the fact it is objectionable under Article 37.07, § 3(a), supra.

**1.** Some of *Allaben's* progeny are *Santiago v. State,* 444 S.W.2d 758 (Tex.Cr.App.1969); *Davis*

*v. State,* 478 S.W.2d 958 (Tex.Cr.App.1972); *McCrea v. State,* 494 S.W.2d 821 (Tex.Cr.App. 1973); *Cleveland v. State,* 502 S.W.2d 24 (Tex. Cr.App.1973); *Wills v. State,* 501 S.W.2d 925 (Tex.Cr.App.1973); and *Stiehl v. State,* 585 S.W.2d 716 (Tex.Cr.App.1979). To the extent that these cases conflict with the provisions of Art. 37.07, Section 3(a), they should, of course, be expressly overruled. One statutory exception to Section 3(a), however, is V.T.C.A., Penal Code, Section 8.04, which provides: "Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried." This exception would, of course, apply to the defendant and not the prosecution. My research to date has yet to reveal

extraneous criminal offenses were admissible. *Murphy v. State,* 700 S.W.2d 747 (Tex.App.—5th, 1985).

In reviewing the trial court's decision to allow the jury to hear the extraneous offense testimony, the court of appeals easily distinguished *Allaben* by pointing out that the facts in *Allaben* did not concern the admissibility of an unadjudicated extraneous criminal offense, but, instead, concerned the exclusion of defensive testimony that related to psychiatric treatment that the defendant had received for his sexual problems. See and compare *Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The court of appeals then pointed out that an unadjudicated extraneous criminal offense may become admissible if the defendant "opens the door" by creating a false impression before the jury. The court of appeals found in this instance that appellant had not made any attempts to mislead the jury nor, because he had not left any false impression with the jury, was the introduction of the extraneous offenses necessary to dispel any false impression. The court of appeals went on to hold that the express provisions of Art. 37.07 controlled, and that "The unadjudicated extraneous offense testimony admitted by the trial court was admitted in violation of article 37.07(3)."

The State thereafter petitioned this Court, seeking a ruling that the extraneous offense testimony was admissible as it went to appellant's application for probation, i.e., the State argued that the extraneous offense testimony was relevant to appellant's suitability for probation. This Court granted the State's petition.

On original submission, this Court's plurality opinion agreed with the court of appeals' holding that the admission of the extraneous criminal offenses violated the provisions of Art. 37.07, as that statute existed when appellant's trial occurred. However, the plurality opinion then invoked the "traditional treatment [this Court had used in the past concerning] the admissibility of extraneous offenses,"

found that the offenses were relevant, but also found that the probative value of such testimony was outweighed by its prejudicial effect. The plurality opinion then held that the error was not harmless beyond a reasonable doubt under Rule 81(b)(2), *Tex. Rules of Appellate Procedure,* and affirmed the judgment of the court of appeals, which had reversed the trial court's judgment of conviction.

Thereafter, this Court granted the State's motion for rehearing.

Today, another plurality opinion holds that "Article 37.07, § 3(a), supra, precludes admission of specific conduct to show character or anything else under the rubric of circumstances of the offender at the punishment phase of trial, either in mitigation or aggravation of punishment ... In short, we reiterate that Article 37.07, § 3(a), supra, ... precludes evidence of specific acts of conduct for that purpose." (Page 64) The plurality opinion further holds that "whether past criminal conduct by an applicant for probation may reveal a trait or propensity to violate the law is not relevant to a material issue tendered by an application for probation in punishment proceeding before a jury. For that matter, neither is a selfserving declaration by applicant that he will not violate the law if placed on probation." (Page 67) The plurality opinion further finds that appellant did not through his testimony in proving up his application for probation "open the door."

I agree with the result that today's plurality opinion reaches in affirming the judgment of the court of appeals, which is the same result that the original plurality opinion reached. Therefore, I concur in the result. As previously pointed out, the court of appeals reversed the trial court's judgment of conviction. Now that the trial is over, and because appellant's punishment was assessed at life imprisonment, the real issue in this cause actually does not concern appellant's application for probation, his suitability for probation, or anything that might be related to probation. The real issue is whether, pursuant to Art.

any other *statutory* exception to Section 3(a) that would permit the defendant himself to introduce any other evidence or testimony than that stated in Section 3(a), supra.

37.07, the State is entitled, without any limitation, to introduce unadjudicated criminal offenses at the punishment stage of appellant's trial.

I write because to me all roads either lead to or from *Allaben*. My views regarding why I believe that the dicta that is found in *Allaben*, namely, "Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible," which has enabled both prosecuting attorneys and defense attorneys to get before the jury evidence that is not expressly admissible pursuant to the express provisions of Art. 37.07, as then worded, have been set out in numerous opinions that I have filed in the following cases of this Court: *Wilford v. State*, 739 S.W.2d 854 (Tex.Cr. App.1987); *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App.1987); *Moncrief v. State*, 707 S.W.2d 630 (Tex.Cr.App.1986); *Davis v. State*, 670 S.W.2d 255 (Tex.Cr.App.1984); and *Thomas v. State*, 638 S.W.2d 481 (Tex. Cr.App.1982). The simple solution to disposing of what the State argues in this cause is to overrule the above dicta in *Allaben*, and expressly hold that Art. 37.-07, as it was worded when appellant's trial occurred, is to be literally read, and further hold that the statute means what it states, and also hold that, if the Legislature had wanted the provisions of the statute to include something else, it would have so stated. In fact, by amending Art. 37.07, to provide for a definition for the legal term "prior criminal record," it is obvious to me that the Legislature did not want the statute, as then worded, to mean more than what is contained therein.

Given the express wording of Art. 37.07, Section 3(a), as it was worded when the hearing on what punishment the jury

should assess appellant occurred, the trial judge clearly erred in this cause when, over appellant's objection, he admitted into evidence the unadjudicated extraneous criminal offenses that appellant had previously committed.

Art. 37.07, Section 3(a), which governs the issue before us, expressly provided at the time when the punishment hearing was held in this cause that a prior criminal offense committed by the defendant is inadmissible evidence against the defendant at the punishment stage of his trial unless it has resulted "in a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." There has never been a provision in Section 3(a) of Art. 37.07 that provided for the following: "Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible." Thus, admissible evidence at the punishment hearing has always been governed by the provisions of Section 3(a). The sentence, "Evidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible," comes to us, not through the provisions of either Art. 37.07, supra, in general, or Section 3(a), supra, specifically, but, instead, through this Court's decision of *Allaben*, when, for reasons not explained in the opinion, it was put in that opinion. *Allaben* also did not cite any authority to support the inclusion of that sentence in the opinion.[2]

In this instance, when admitted into evidence, the unadjudicated criminal offenses were not final convictions, nor had they resulted in final probated or suspended sentences. There is also no evidence in the

---

**2.** Justice James K. Allen, who wrote the opinion for the Court of Appeals in this cause, correctly observed the following: "A close examination of the *Allaben* case reveals that it in fact does not deal with the admission of an unadjudicated extraneous offense. Rather, *Allaben* held that the trial court should have allowed the *defendant*, a sex offender, to show that he had sought psychiatric treatment for his sexual problems in a case where an application for probation was before the jury, but that the court's refusal to allow the testimony was not reversible error. *Allaben*, 418 S.W.2d at 519. In that context, the court's statement that '[e]vidence legally admissible to mitigate punishment or evidence that is relevant to the application for probation, if any, is also admissible' can hardly be considered a holding that evidence of an unadjudicated extraneous offense is admissible at the punishment phase whenever the defendant applies for probation." 700 S.W.2d at 749.

record that appellant "opened the door" which would have permitted the trial judge to admit them into evidence. Thus, when the trial judge admitted into evidence the prior unadjudicated criminal offenses he violated the provisions of Art. 37.07, Section 3(a), and his act of overruling appellant's objection was clearly erroneous. Given the fact that there is not a reasonable possibility that such error did not contribute to the punishment that was assessed by the jury, life imprisonment and a $10,000 fine, the judgment of the court of appeals, which reversed the trial court's judgment of conviction, must be affirmed.

In this instance, given the provisions of Art. 37.07, Section 3(a), the trial judge clearly erred by admitting the unadjudicated extraneous criminal offenses into evidence. Given our facts, the error is clearly not harmless beyond a reasonable doubt. See Rule 81(b)(2).[3] Appellant's punishment must be set aside.

For all of the above reasons I respectfully concur in the result that the plurality opinion reaches, that the judgment of the court of appeals, which reversed the trial court's judgment of conviction, is affirmed.

MILLER, J., joins.

DUNCAN, Judge, concurring.

I must concede that I am rather puzzled and frankly confused by the majority's opinion. Although I agree with its disposition of the ground for review I reach that conclusion for vastly different and less complex reasons.

As a preliminary observation, it should be noted that Art. 42.12, V.A.C.C.P., authorizes a jury to recommend probation in their punishment verdict, which obviously comes at the conclusion of the punishment stage of a trial. Art. 37.07, § 3(a), V.A.C. C.P., permits certain evidence to be admitted during the punishment stage of a trial. Thus, it is impossible for me to agree that a defendant's "suitability" for probation is in essence an irrelevant issue for the jury. Logic and reason, if nothing else, dictate the opposite conclusion. However, evidence of one's "suitability" for probation is limited to that specifically authorized by Art. 37.07, § 3(a) and established rules of evidence.

Art. 37.07, § 3(a), supra, as originally enacted in 1965, stated that after a defendant was convicted the State or the defendant may offer evidence of the defendant's prior criminal record, his general reputation and his character. In 1967 Art. 37.07, § 3(a), was amended to the extent that it specifically defined "prior criminal record" as "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged." *Id.* Since 1967 Art. 37.07, § 3(a), has successfully weathered all of the intervening legislative sessions virtually unchanged.

Despite its continuity the issue of what evidence is or is not admissible during the punishment phase of a trial has produced an array of opinions in which the conclusions were as inconsistent as the styles of the cases. This Court, and since 1982 the various courts of appeals, have written opinions that seem to have ignored established rules of evidence. Consequently, there is absolutely no way to reconcile the opinions; therefore, I am not even going to try and do so.[1]

---

3. Because the jury assessed appellant's punishment at more than ten years, the issue of probation is really not now involved in this case because the penalty assessed, life imprisonment, would have prevented the consideration of probation by the jury. See, e.g., *Brown v. State,* 475 S.W.2d 938, 957 (Tex.Cr.App.1972). However, because the unadjudicated extraneous criminal offenses were not admissible at the punishment stage of appellant's trial, and because it is impossible to state that the jury did not consider them in assessing appellant's punishment at life imprisonment, the error is not harmless beyond a reasonable doubt. See Rule 81(b)(2).

1. I agree with Judge Teague that the probable source of this confusion lies in the permissive dicta in *Allaben v. State,* 418 S.W.2d 517 (Tex. Cr.App.1967). *Allaben* and its progeny should be overruled. If the Legislature wants the jury to have access to evidence beyond that authorized by Art. 37.07, § 3(a), supra, it should pass legislation to that effect. It is not this Court's function to authorize an expansion of the statute beyond its language.

Despite the confusion that appears to reign, it is clear to me that Art. 37.07, § 3(a), is straight forward in what can be admitted into evidence during the punishment stage of a trial. For example, the State, as direct evidence, can only introduce as a defendant's prior criminal record only prior convictions from a court of record, prior probations, whether completed or not, and any suspended sentence. In addition, it can introduce a prior conviction, whether from a court of record or not, if it is material to the offense charged. For example, in *Chestnut v. State*, 567 S.W.2d 1 (Tex.Cr.App.1978), interpreting Art. 37.07, § 3(a), supra, this Court confirmed the admissibility of three assault convictions from a Municipal Court during the punishment stage of an aggravated robbery prosecution.

The standards of admissibility relative to the introduction of a defendant's "prior criminal record" are clearly stated and have not caused either the bench or bar much difficulty. The difficulty with Art. 37.07, § 3(a), supra, that has plagued the bench and bar is the role that a defendant's reputation and character play in the punishment stage of the trial. At the outset it must be emphasized, as it has been in the past, that "reputation" and "character" are not the same thing. "Character" "[i]s a *person's disposition*—i.e. a trait, or group of traits, or the sum of his traits...." 1 *Wigmore on Evidence* § 52. Or, "[c]haracter refers to the inherent qualities of a person." 1A R. Ray, *Law of Evidence* § 1324 (Texas Practice 3rd ed. 1980). "Reputation," however, "applies to the collective opinion of the community as to ...," *id.*, one's inherent qualities (character). As an evidentiary device, reputation testimony is a recognized exception to the hearsay rule and is used to prove one's character. *Moncrief v. State*, 707 S.W.2d 630 (Tex.Cr. App.1986).

In *Moncrief* the Court noted that Professor Roy Ray recognized that in addition to reputation there were two other means of proving one's character: "(1) personal opinion of witnesses who know the person ... (3) conduct of the person from which an inference may be drawn as to his actual disposition." *Id.*, 632. In 1965, when Art. 37.07, § 3(a), supra, was enacted by the Legislature the only way that character could be proven by direct evidence was reputation testimony. Therefore, personal opinions as to a defendant's moral character were inadmissible. Ray, supra, § 1432. And, specific acts of conduct, either good, *Ward v. State*, 591 S.W.2d 810 (Tex.Cr. App.1979), 1 *Wharton's Criminal Evidence* (13th ed. 1972) § 230, or bad, *Garcia v. State*, 454 S.W.2d 400 (Tex.Cr.App.1970), were equally inadmissible. This remained the law until September, 1986 when the Rules of Criminal Evidence were adopted. Now, under Rule 405(a) both reputation and opinion testimony are acceptable methods of proving one's character. However, as direct evidence, specific instances of conduct are still inadmissible.

It has always been the general rule in Texas and most other jurisdictions that during the guilt/innocence stage of a trial a defendant could introduce evidence of his good character through reputation testimony. It has similarly been the general rule that the State could not introduce evidence of a defendant's bad character, unless the defendant made it an issue. Art. 37.07, § 3(a), and the creation of the bifurcated jury trial changed that somewhat. Specifically, Art. 37.07, § 3(a), supra, authorizes the State to introduce evidence of a defendant's character even before the defendant makes it an issue. *Smith v. State*, 414 S.W.2d 659 (Tex.Cr.App.1967). However, in my opinion Art. 37.07, § 3(a), was enacted with an awareness of the restrictions then applicable to evidence of one's character. Thus, because the punishment stage of the trial necessarily incorporated concerns that went beyond the defendant's guilt or innocence and included the propriety of the jury recommending probation in a given case the Legislature approved a departure from existing procedural restraints and authorized the State to introduce as direct evidence reputation testimony as to the community's perception of the defendant's character. But that certainly does not mean that it endorsed a complete departure from evidentiary standards of ad-

missibility that had become firmly established in Texas practice. In other words, even though Art. 37.07, § 3(a), altered procedure it did not change the common law rules of evidence. Consequently, neither the State nor the defendant could introduce opinion evidence of a defendant's bad or good character. Further, Art. 37.07, § 3(a), supra, did not authorize the State to introduce specific acts of misconduct to prove a defendant's bad character, nor did it authorize a defendant to introduce specific acts of good conduct to prove his good character. *Ward v. State*, supra.

During cross-examination the rules were and are somewhat different. If a defendant introduced evidence of his good character through a reputation witness, the State was then able to impeach the witness by the absurd ploy of "have you heard" (not the more reasonable "did you know") questions and thereby indirectly develop the existence of prior acts of misconduct. *Ward v. State*, supra. But, the purpose of the inquiry was to test the character witnesses' reputation testimony and "not to discredit the person on whose behalf the witness is testifying." *Brown v. State*, 477 S.W.2d 617 (Tex.Cr.App.1972). Although I have found no cases to support the following observation, I think it is clear that a defendant could test a State's reputation witness with "have you heard" questions thereby asserting previous acts of good conduct. The adoption of the Rules of Criminal Evidence maintained that procedure. The last sentence in Rule 405(a) states: "In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct." *Id.*

Further, even when specific acts of misconduct are permitted for impeachment purposes it "has long been established and is now universally recognized that such specific acts may not be proved by testimony of other witnesses." Ray, supra, § 656. Thus, extrinsic evidence could not be used in lieu of impeachment by cross-examination. See now: Rule 608(b), *Tex.R.Cr.Evid.* In addition, then Art. 38.29, V.A.C.C.P.,

expressly forbade the use of pending charges to be used as a vehicle of impeachment.

In the case at bar, the appellant testified that he had never been convicted of a felony or been placed on probation. Afterwards the State had admitted as rebuttal evidence five other offenses which he had been charged with committing. This was obviously not reputation evidence so it should not have been admitted under that theory. It was, however, evidence of prior specific acts of misconduct which is not permitted. Further, the appellant's testimony was obviously not reputation testimony of his character. Nor was it inadmissible opinion testimony of the appellant's character because it did not concern "a trait, or group of traits, or the sum of his traits...." Wigmore, supra. His testimony was simply a historical fact that was admissible because of Art. 42.12(b), supra. Quite simply, there was no testimony for the State to impeach. Thus, the evidence of the other offenses should not have been admitted.[2]

It just does not seem that this case should be that difficult.

I concur.

WHITE, Judge, dissenting.

Because the majority's opinion on rehearing withdraws probative and admissible evidence from the members of the jury, I respectfully dissent to the majority's opinion on rehearing for the reasons explained in my dissenting opinion on original submission. *Murphy v. State*, 777 S.W.2d 44 (Tex.Cr.App., No. 102–86, this day decided) (dissenting opinion on original submission).

BERCHELMANN, J., joins this dissent.

---

**2.** I recognize that a defendant's testimony may "open the door" and allow the State to respond

beyond the limitations previously noted. However, that obviously did not occur in this case.