**Doyle David CORLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–90–105 CR.**

Court of Appeals of Texas, Beaumont.

June 10, 1993.

Tom Brown, Livingston, for appellant.

Terry Brown, Dist. Atty., Livingston, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

**OPINION ON REMAND**

PER CURIAM.

A jury convicted appellant of attempted aggravated sexual assault of a child under 14 years old and assessed his punishment at the maximum allowed, twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. This court, in an unpublished opinion, affirmed the trial court. The court of criminal appeals, in an unpublished opinion, vacated the judgment of this court and remanded the cause for reconsideration in the light of *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim.App.1992).

During the punishment stage of the trial, two unadjudicated extraneous offenses were admitted. Both of these involved sexual assaults on young males. Under *Grunsfeld*, this was error. In light of the following factors, (a) the extraneous offenses were of a similar nature, (b) the

extraneous offenses were more serious than the offense in chief, (c) the offenses were argued by the state and (d) the maximum punishment was assessed, we are unable to find, beyond a reasonable doubt, that the erroneous admission of the extraneous offenses made no contribution to the punishment. Tex.R.App.P. 81(b)(2). Consequently, we reverse and remand for a new hearing on punishment.

REVERSED AND REMANDED.

BROOKSHIRE, Justice, dissenting.

I respectfully dissent. With deference I would argue that the Court's opinion should read as set out hereafter.

Appellant was convicted by a jury of attempted aggravated sexual assault of a child under the age of 14 years. The appellant filed an application for probation; a jury assessed punishment at 20 years confinement in the Institutional Division of the Texas Department of Criminal Justice and also levied a fine of $10,000. This sentence was the maximum that could have been imposed under the law. Appellant perfected his appeal to this Court and on September 11, 1991, this Court rendered an opinion overruling appellant's points of error and affirmed the judgment and sentence of the trial court in an unpublished opinion.

The appellant, D.D.C., filed a petition for discretionary review and the Texas Court of Criminal Appeals granted said petition to determine whether unadjudicated acts of misconduct are admissible at the punishment phase of a non-capital trial after the legislative amendment in 1989 to Tex.Code Crim.Proc.Ann. art. 37.07(3)(a) (Vernon Supp.1993). In an unpublished, per curiam opinion delivered January 6, 1993, the Texas Court of Criminal Appeals vacated the judgment of this Court of Appeals and remanded the cause to this Court for reconsideration in light of its decision in *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim. App.1992).

This Court has not been favored with briefs on remand from either appellant or appellee; therefore, this review is confined to determining if the trial court committed reversible error when it allowed the introduction of testimony of two young male witnesses who testified that they had been sexually assaulted by the appellant. This testimony was admitted during the punishment phase of the trial of this cause.

The issue before the Texas Court of Criminal Appeals in *Grunsfeld* was to determine whether Article 37.07(3)(a) as amended, allows admission of unadjudicated extraneous offense evidence in the punishment phase of a trial of a non-capital offense.

In *Grunsfeld* as in *Jerred J. Hunter v. State* (decided with, and as a companion case to *Grunsfeld*) each defendant was charged with the offense of aggravated sexual assault on a female and in each case at the punishment phase testimony was admitted that the respective defendant had sexually assaulted other individuals but there was no final conviction of said assaults. Timely objections to that testimony were lodged by each defendant under Article 37.07(3)(a) as being inadmissible. *In each case the defendant's mother testified that the defendant had not been previously convicted of a felony, thus establishing his eligibility for probation.*

The relevant portion of Article 37.07(3)(a) as amended provides as follows:

Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to *any matter the court deems relevant to sentencing, including* the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged. (emphasis on portion added by amendment).

After the Court of Criminal Appeals in *Grunsfeld* examined the legislative intent and history of the amendment in question and the term "prior criminal record," the court found evidence of extraneous unadjudicated offenses was improperly admitted.

After finding error, the court noted that it would be reversible unless it could be determined beyond a reasonable doubt that the error made no contribution to the assessment of punishment. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989); Tex. R.App.P. 81(b)(2). The court then affirmed the opinion of the Dallas Court of Appeals which had reversed the trial court in *Grunsfeld*, and reversed the opinion of the Fort Worth Court of Appeals in *Hunter* which had affirmed the trial court and remanded both cases to their respective trial courts for proceedings consistent with Tex. Code Crim.Proc.Ann. art. 44.29(b) (Vernon Supp.1993).

In the case before us the appellant filed a motion in limine to prevent the introduction of any evidence of alleged crimes, wrongs, or acts of the appellant. Appellant further filed a motion for notice of all extraneous offenses contemplated by the prosecution to be introduced at trial. Appellant preserved the error at all times during the trial of this cause.

After the jury found the appellant guilty of attempted aggravated sexual assault of the complainant who was 13 years old at the time of the offense, the jury also heard evidence during the punishment phase of the trial. Appellant was notified in advance by the State of two extraneous offenses each of which was a sexual assault on a male minor, and that the State would tender evidence of those extraneous offenses to the jury. *The appellant had filed a motion for probation* by sworn affidavit that he had not been convicted of a felony in the State of Texas or any other State. This motion is the sole basis for probation; nothing else was offered.

During the punishment phase the State called as a witness a young person, A.J. This young person swore that while he was trying on soccer shoes, the appellant took him to an upstairs area in the retail store that was not normally open to the public. The scene upstairs was a rather secluded spot. The record reflects that the appellant told A.J. to pull his pants down and then he measured A.J.'s penis and then measured A.J.'s shoes, acting like these measurements had something to do with trying on a shoe, or fitting a shoe of the proper size. Next, the appellant put his lips around A.J.'s penis and sucked on it. A.J. then pulled up his pants. The appellant admonished as follows: "Shh, don't tell anybody." A.J. was scared during this episode. A.J. had never had anything like that happen to him before. This experience was the most embarrassing thing that had ever happened to A.J.

When A.J. and his mother were outside of the store, A.J. told his mother everything that had happened. This terribly upsetting and horrendous experience caused A.J. to be scared and mad. A.J. started crying. He even started to scream at his own mother.

The State also called to the stand at the punishment phase a young person whose initials are C.D. The record reflects that C.D. had been threatened by one or more members of the family of the appellant, but C.D. gave testimony in open court. C.D. had been hitchhiking and had been picked up by the appellant. The appellant was nice to C.D. and offered to wash C.D.'s clothes.

The record reflects that at a later time while C.D. was in the appellant's living quarters, the appellant went into a closet and pulled out a handgun which appeared to be a 9 mm. C.D. testified that it was an automatic pistol and contained a clip in the handle, or butt, of the gun. The appellant put the handgun up to the head of C.D. C.D. testified that the handgun was loaded. C.D. wasn't sure on this point, but it appeared to be loaded and C.D. was afraid. C.D. definitely thought the handgun was loaded. The pistol was cocked and ready to fire and the pistol in the hand of the appellant was put up to the head of C.D. C.D. at this point was definitely scared. C.D. had been wearing a towel. The appellant pulled the towel off C.D. The appellant then put his own mouth on the penis of C.D. and started sucking on C.D.'s penis. C.D. was scared at this time as well. C.D. testified that he thought the appellant was

going to shoot him (C.D.) with the handgun. After this episode the appellant reached beneath a bed and took out a box. The appellant unlocked the box and placed a videotape into a VCR. The videotape was a picture of homosexual activities. Then, according to the record, the appellant made C.D. suck on his (the appellant) penis. The appellant still had the handgun in his own hand. C.D. was still frightened.

The appellant had sex with the rear-end of C.D. The action hurt C.D. No condom was used. No type of lubricant was used. No vaseline was used. The appellant still had the handgun in his own hand and the appellant made C.D. perform a sex act with the appellant in the appellant's own rear-end. Again, no condom was used. These acts were followed by even more bizarre activity.

The State argued that it was concerned with the public health problem and the issue of AIDS. The prosecution then forcefully argued for a long prison term and for the maximum term of years. The defense argued vehemently for probation and rehabilitation. The defense wanted to place the accused in normal living conditions without restrictions on physical movements.

The State in its final argument referred on several occasions to the extraneous offenses. The State asked for twenty years confinement in the penitentiary and a $10,000 fine to be assessed against the appellant. The jury so sentenced the appellant, which is the maximum punishment allowed under the law.

### The Probation Eligibility Question

TEX.CODE CRIM.PROC.ANN. art. 42.12 (Vernon Supp.1993) deals with adult probation. The purpose of this Article is to remove from existing statutes, limitations other than questions of constitutionality that have acted as barriers to effective systems of probation *in the public interest.* Article 42.12 § 4(a) (formerly § 3a) affirmatively provides that in no case shall probation be recommended by the jury except when the sworn motion and proof shall show that the defendant has never before been convicted of a felony in this state or any other state.

Appellant wholly failed to present such evidence and proof as required by Article 42.12 § 4(a). The mere filing of a motion for probation is not sufficient proof to establish an accused's eligibility for probation. Indeed, the jury need not even be charged on the issue of probation in the absence of evidence before the jury to support the motion for probation. Essential evidence (in addition to the motion itself) is necessary to establish the accused's eligibility. *See Palasota v. State,* 460 S.W.2d 137 (Tex.Crim.App.1970); *Walker v. State,* 440 S.W.2d 653 (Tex.Crim.App.1969); *Tenery v. State,* 680 S.W.2d 629 (Tex.App.— Corpus Christi 1984, pet. ref'd). The *Grunsfeld* opinion affirmatively pointed out that the defendants there made proper proof of their eligibility for probation through their respective mothers. The necessary proof does not exist in our case. The rule is well established that extraneous offenses that have been prosecuted to final judgments are admissible evidence at the punishment phase.

### The Offenses With A.J. and C.D. Reexamined and Reanalyzed

In the unique record before us, a forceful demonstration was made that A.J., the ten-year old boy who had been taken up to the store room in the shoe store, was hysterical after exiting the shoe store. The ten-year old A.J. told his mother what had happened to him while in a private place with the appellant. A.J.'s family contacted the county attorney. One of A.J.'s parents wanted to file criminal charges and such charges were talked about. Later, A.J. and at least one parent met with the appellant and the appellant's father. The meeting was with the county attorney. An agreement was reached that the appellant would get psychiatric counseling. Upon that material, crucial representation charges were not pressed. The appellant did receive some psychiatric counseling. The record is not clear as to how many counseling sessions were conducted or over what period of time. However, the record does reflect that the psychiatrist later got

back in touch with the county attorney. *The psychiatrist explained that the appellant could not be helped because the appellant did not want help. The appellant, through his representation and agreement that he would get psychiatric counseling, thwarted the filing of charges and thereby thwarted and defeated the obtaining of a final judgment on the offense involving A.J. Nothing in Grunsfeld approves of or lauds this type of conduct which prevents the obtaining of a final judgment because of the acts, conducts, and machinations of the appellant. These unusual circumstances cloak this offense with admissibility.*

Appellant forced at gunpoint a second young victim to perform sexual acts. This victim was C.D. After the appellant had forced C.D. to perform oral sex at pistol point, then with the gun still in the appellant's hand and with the juvenile still very frightened, the appellant started having sex with the young man's "rear-end". The record reflects that the appellant did not wear a condom during this episode. The record also reflects that the appellant did not use any type of lubricant and that the anal intercourse performed on C.D. was painful. After C.D. complained and told the appellant that "it hurt", the appellant quit.

Then the record reflects that the appellant got on his (the appellant's) hand and knees and the appellant turned around and was watching C.D. With the gun still in the appellant's hand, the appellant made C.D. have sex with the appellant in the appellant's rear. Several other bizarre sexual encounters took place. The record reflects that at least in one instance the appellant's penis was not washed after one encounter took place and before another sexual encounter began. The record reflects that C.D. had been later tested for AIDS.

The statement of facts, without any controverting evidence, reflects that during one of the episodes when the appellant was making C.D. suck on the appellant's penis that the appellant did ejaculate into C.D.'s mouth. The record also reflects that C.D. did not want to testify. He had been

threatened; his family had been threatened.

The record tends to show that the threats originated from appellant's family members. The record also reflects that a session was held in chambers. The statement of facts concerning the in-chambers proceeding sets out that several members of the appellant's family were in attendance in court and that threats had been made against C.D. that same day. The court directed the appellant and his counsel to admonish the members of appellant's family not to make any threats or any threatening gestures at or toward C.D. or his family. The trial court ordered that the members of the family vacate the first four rows in the courtroom and sit in the back of the courtroom. The record shows that it took courage on C.D.'s part to testify; also for justifiable reasons a judgment had not been reached in C.D.'s episode. The sexual episodes involving C.D. according to the record were somewhat lengthy. C.D. still suffered from nightmares about the episodes. Of C.D., the appellant had no questions. There was no cross-examination of C.D. The defense rested and closed immediately after the State rested.

As I appreciate the record, the defense offered no proof. Therefore, the appellant violated Article 42.12. Appellant did not prove his eligibility for probation under *Grunsfeld* and under the pertinent statute.

Under the record, the State had a sound basis to be concerned about AIDS, called the Black Plague of the 20th Century or the equivalent of the plague in Europe in the Middle Ages. Medical experts agree that there is no cure for AIDS. The State had a legitimate, paramount interest in defeating the motion for probation. Obviously and correctly the State did not want the appellant back on the street at his liberty. It is true that the State argued that the appellant was a dangerous man and that he was dangerous to the children of the community. The State did make an argument for law enforcement and argued that the jury should protect society from people like the appellant. The State observed and argued that:

828

I don't know about you, but when [C.D.] was sitting there in that bedroom, saw the defendant take that pistol, pull back the slide, and load that bullet into that chamber, I had chills come all over me. What that boy went through. This man is a pervert, and that's putting it lightly. He's a pervert. Anyone who would suck on a penis that's been in someone's rear end is a pervert. Don't feel sorry for this man. Feel sorry for the victim. He made his own bed. Don't accept excuses.

The State argued against probation. The State argued:

Anything less than 20 years will be an injustice and create a real danger for our children. Our children are our future. Remember that. This man has preyed on children. Like I said, the wolf that goes after the sick and injured; the ones that are the least able to protect themselves.

Expecting this homosexual pediaphile [sic] to change his sexual interest in children of the same sex is like telling a normal heterosexual person that from this day on you can only have homosexual relations. I'm not down on homosexuals. If you've got two consenting adults, whatever they do in the privacy of their own home, that's fine and dandy with me. When you start involving children, my blood boils.

These children did not have a say so. [D.L.S.] did not have a say so. 20 years. We don't want this man in our backyard around our children, in short order.... We need to protect the children of our community. We do not need people like this in our community.

Under the record, the State had an overriding paramount interest in the protection of the children of the community in and around Livingston and Polk County from the risks and dangers demonstrated. That abiding, paramount and overruling State interest was not disallowed in *Grunsfeld*. The Court of Criminal Appeals, I think, has not had a record of this sort presented to them.

I conclude at this level that the appellant thwarted the filing of charges and thus defeated the obtaining of a final judgment concerning the first extraneous offense; and hence, should not be permitted to take advantage of his own deceptive machinations. As to the second extraneous matter, the State has a paramount, superior interest to protect. This interest, I determine, outweighs the derogations of the extraneous evidence rule under 37.07(3)(a). In any event, this appellant failed to prove his eligibility for adult probation.

Thus, the State in D.D.C.'s case had a special interest—indeed a unique paramount interest—in defeating and thwarting the spread of AIDS among the children and youth of Texas. Inasmuch as the appellant in summation made a plea for rehabilitation and probation the State properly anticipated the same and properly met that argument by overwhelming proof. The State could not know exactly when appellant would offer eligibility for probation evidence. Although the appellant ultimately failed to show eligibility, the State had to proceed to defeat appellant's plan to return to the streets and highways.

Judge Clinton recognized in *Murphy v. State*, 777 S.W.2d 44 (Tex.Crim.App.1988) (Opinion on Rehearing) that the Court of Criminal Appeals had acknowledged since *Allaben v. State*, 418 S.W.2d 517 (Tex. Crim.App.1967) that other circumstances and other strings of evidence such as the appellant's family background, church affiliations, education, employment history, and the like are appropriate considerations in the assessment of punishment. The rationale was that article 37.07 was not exhaustive but precluded evidence of specific acts to show "character" evidence. Judge Clinton further wrote that in determining the assessment of punishment the fact finders engaged in a normative process. Further, the material issue in assessing punishment is indistinct and the admissibility of evidence cannot be determined by deductive logic. *Thus, what is relevant and admissible in determining a proper assessment of punishment is paramountly a question of policy. Id.* The policy undergirding the State's evidence at the

punishment phase here is not only obvious, but compelling.

In *Murphy*, the jurist writes:

Modern penological thought also holds that, along with the circumstances of the offense, "[h]ighly relevant—if not essential—to ... selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1949).... [T]his Court has held evidence of "the circumstances of the offense itself or ... the defendant himself" to be admissible at the punishment phase. *Stiehl v. State*, 585 S.W.2d 716, 718 (Tex.Cr.App.1979).

*Id.* at 63.

The record clearly reflects that the appellant cannot argue that he was blindsided by the evidence of these matters because the State, upon the appellant's motion, gave full notice prior to trial. The jury should be put in a position to assess an appropriate punishment that fits not only the crime but also fits and is appropriate for the defendant as well. *U.S. v. Fulbright*, 804 F.2d 847 (5th Cir.1986). Indeed, the assessed punishment should fit the offender as well as being suitable to the crime committed. *U.S. v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978). The judiciary of Texas should acknowledge that the State, who represents the people of Texas, is entitled to a fair trial and a fair and appropriate assessment of punishment.

The unique facts introduced in the punishment phase coupled with the prosecution's right to protect the people's vital interests, as set out above, linked with the prosecution's duty and necessity to meet and defeat probation, distinguishes this record from *Grunsfeld, supra.* Because of the different and unusual procedural posture of this case and in view of the rationale and reasons above, I would affirm, on the Remand, the trial judgment.